THE PEOPLE ex rel. JOHN D. NEGUS, Respondent, v. WILLIAM DWYER, Appellant.

A proceeding to punish for an alleged criminal contempt, originating in the violation of an order granted in a civil action, is a civil special proceeding within the meaning of the Code of Civil Procedure (§§ 1356, 1357), and an order therein finding the party proceeded against guilty, and imposing a punishment, is reviewable here upon appeal (§ 190, subd. 3).

As to whether an appeal is proper from an order punishing a disobedience of an order of a criminal court in a criminal action *quære.*

Under the act of 1874 (chap. 585, Laws of 1874), incorporating the B. E. S. S. R. R. Co., and providing for the construction by it of an elevated railroad through certain specified streets of the city of Brooklyn, "or on such streets and avenues as may be named by the mayor and common council" of said city, the common council passed a resolution naming certain streets, and sent it to the mayor, who returned it with a message of disapproval. This action was then brought against the city and the railroad company to restrain and prohibit the occupation of certain of the streets so named. A temporary injunction was granted restraining the common council from overriding or disapproving the mayor's veto; this was properly served upon each member of the common council, notwithstanding which, that body by a vote of two-thirds of its members, repassed the prohibited resolution over the mayor's veto. In proceedings to punish for criminal contempt, a member so voting, *held,* that the common council acted as agents of the city and in its behalf, and the city being a party to the action, the members of the common council were bound by the injunction; that an order adjudging them guilty of the contempt charged, and imposing punishment therefor was proper.

Also *held,* that it was not material that the passing of these resolutions was ineffectual; that the members voting having done the prohibited act, the question as to whether the disobedience was harmless, or the act enacted a nullity, could not be considered here.

Also *held,* that whether the act sought to be enjoined, was, or was not of a legislative character, and whether other facts justified the interposition of equity, were questions to be disposed of by the court acting on the facts; it had power to prohibit action until it could investigate, and finally decide, and any error in its decision could only be corrected on appeal.

While equity will not ordinarily interfere with matters resting largely in the discretion of municipal authorities, where the threatened action will produce irreparable injury, and consists in an illegal grant, or the disposition of public property, by devoting it in whole or in part to the uses of a private corporation, or the attempted action is corrupt and fraudulent, the court may interfere by injunction.

An objection was taken on the hearing that it did not appear that the summons and complaint in the original action had been served on the city of Brooklyn, there was no formal proof of service, and the court ordered such proof to be filed *nunc pro tunc.* Among the papers upon which the attachment in the proceedings was issued, was an affidavit which alleged that summons and complaint was served on the defendants and on the members of the common council. *Held,* that the papers sufficiently showed that the city had been served, and so was a party ; and that the order was no error:

Also *held,* that the fact that the injunction was granted by the county judge, was immaterial ; it was none the less the mandate of the court. (Code, §§ 606, 3343.)

(Argued November 15, 1882; decided November 28, 1882.)

Appeal from order of the General Term of the Supreme Court, in the second judicial department, made May 8, 1882, which affirmed an order of Special Term adjudging the defendant to be guilty of contempt "in wilfully violating" an injunction order, and imposing a fine and imprisonment as a punishment therefor. (Reported below, 27 Hun, 548.)

The material facts are stated in the opinion.

*Winchester Britton* for appellant. An injunction can only restrain parties to an action, and those acting under them as agents, officers and employes. Every person affected by an injunction order has a right to be brought into court so that he may be heard. (Code of Civil Procedure, 603, et seq. ; *Watson* v. *Fuller,* 9 How. 425 ; *Edmonston* v. *McLeod,* 19 Barb. 356; 16 N. Y. 543 ; *Fellows* v. *Fellows,* 4 Johns. Ch. 25 ; *Sage* v. *Quay,* 1 Clark's Ch. 347 ; *Waller* v. *Harris,* 7 Paige, 167 ; 20 Wend. 555 ; *Batterson* v. *Finn,* 32 How. 501 ; *People* v. *Compton,* 1 Duer, 555.) The non-compliance with an order which the court had no lawful right to make on the facts, will not be punished as a contempt. (*Fisher* v. *Raas,* 81 N. Y. 238.) If Judge Moore's order restrained the common council from a legislative act, or from a lawful exercise of its powers specially conferred, it had no warrant in the law, because a discretionary act will not be enjoined. *Dams* v. *The Mayor,* 1 Duer, 506 ; *People* v. *Sturtevant,* 9 N. Y.

273 ; *State* v. *The Mayor*, 3 Duer, 130 ; *Harrison* v. *City of New Orleans*, 39 Am. Rep. 272.) · An injunction to restrain such an act will not issue, the legal remedy being perfect. (14 N. Y. 507; *State* v. *The Mayor*, 3 Duer, 130; *Davis* v. *The Mayor*, 1 id. 505, 506; *Heywood* v. *Buffalo*, 14 N. Y. 534; *Guest* v. *Brooklyn*, 69 id. 506 ; *Stewart* v. *Palmer*, 74 id. 183 ; *Townsend* v. *New York*, 77 id. 542.) Prior to the enactment of the Code of Criminal Procedure, an adjudication of criminal contempt was reviewable in this court by *certiorari* or otherwise. (*People* v. *Hackley*, 24 N. Y. 74.) By the Code of Criminal Procedure, such right of review is preserved, but by appeal. (Code of Criminal Procedure, § 519 ; *Clark* v. *Bininger*, 75 N. Y. 344; *People ex rel. Day* v. *Bergen*, 53 id. 404.) The appeal is not from a proceeding to punish solely for a criminal contempt as defined by section 8 of the Code of Civil Procedure, but is a proceeding included as well in section 14; subdivision 8, of said Code, and the determination was final. It is a special proceeding in aid of a civil remedy, not a proceeding in the action. (*Ludlow* v. *Knox*, 7 Abb. Pr. [N. S.] 411; *People* v. *Sturtevant*, 5 Seld. 263 ; *Erie Ry. Co.* v. *Ramsey*, 45 N. Y. 637 ; *Brinkley* v. *Brinkley*, 47 id. 40 ; *People* v. *Pendleton*, 64 id. 622 ; *Tremaine* v. *Richardson*, 68 id. 617 ; *Devlin* v. *Devlin*, 69 id. 212 ; *Slater* v. *Merritt*, 75 id. 268 ; *People* v. *R. & S. L. R. R. Co.*, 76 id. 294.; *O'Gara* v. *Kearney*, 77 id. 423 ; *Watrous* v. *Kearney*, 79 id. 496 ; *Park* v. *Park*, 80 id. 156 ; *German Savings Bk.* v. *Habel*, id. 273 ; *Fischer* v. *Raab*, 81 id. 235 ; *In re Eldridge*, 82 id. 162 ; *Gardner* v. *Gardner*, 87 id. 14 ; *People* v. *Compton*, 1 Duer, 572 ; Code of Civil Procedure, § 12.)

*David Barnett and Herbert G. Hull* for respondent. No appeal lies to this court from the order or judgment in question, it being for criminal contempt. (*People* v. *Nevins*, 1 Hill, 158; *The Mayor of London Case*, 3 Wils. 188 ; *Yates* v. *Lansing*, 9 Johns. 421; *Gist* v. *Bowman*, 2 Bay, 182; *Earl of Shaftenbury's Case*, 2 State Trials, 615 ; 1 Mod. 144 ; *Queen* v. *Paty*, 1 Ld. Raym. 1103 ; *King* v. *Crosley*, 3 Wilson, 188;

2 Bl. 754; *In re Yates*, 4 Johns. 370–1–3; 3 R. S. 470, § 13 [4th ed.]) The injunction was operative and binding upon the members of the common council, although they were not named as defendants in the action. (Laws of 1873, Title 2, § 13, 1299, 1300; *People* v. *Sturtevant*, 9 N. Y. 277; *Rorke* v. *Russell*, 2 Lans. 242; *Davis* v. *The Mayor*, 1 Duer, 510; id. 451; *Martin* v. *The Mayor, etc., of Brooklyn*, 1 Hill, 545-549; *N. Y. & B. G. M. Co.* v. *City of Brooklyn*, 71 N. Y. 510; *Maximilian* v. *The Mayor*, 62 id. 160; *Russell* v. *Mayor*, 2 Ohio, 461, 481.) Public bodies and public officers are amenable to the jurisdiction of courts of equity. (*People* v. *Canal Board*, 55 N. Y. 393; *Davis* v. *Am. Society*, 75 id. 369; *Wood* v. *City of Brooklyn*, 14 Barb. 435; 2 Wait's Pr., 108.) The order of Judge Moore made in an action in this court, was a valid mandate of this court, and its defiance by the defendant is a contempt of this court and punishable therein. (Code of Civil Procedure, §§ 8, 14, 606; *Erie Ry. Co.* v. *Ramsey*, 45 N. Y. 646–7.)

FINCH, J. The relator brought an action against the city of Brooklyn, the Brooklyn Elevated Railway Company, and the receivers of that company, the ultimate object of which was to restrain and prevent the occupation of certain streets in the city by the elevated road, and forbid any grant of authority by the city for such occupation. The complaint described the situation as it existed at the commencement of the action. It showed that the Elevated Railway Company was chartered in 1874 and 1875, and authorized to construct and operate an elevated road on certain specified streets and avenues of the city, " or on such streets and avenues as may be named by the mayor and common council of the city of Brooklyn as being more suitable for carrying out the objects contemplated in the erection of said elevated railway." (Chap. 585, Laws of 1874.) It further alleged that before the Elevated Company began the construction of its road, it applied to the mayor and common council to name other streets and avenues for its occupation; that such common council complied with the request, but their

resolution to that effect was vetoed by the mayor, and the company thereafter began the construction of its road upon the streets and avenues dictated by its charter. The complaint then charges that on the 12th of November, 1881, the Elevated Company again applied to the mayor and common council to name other streets and avenues which it might occupy ; that the common council consented, but the mayor again vetoed the resolution. Since it was apparent that at least two-thirds of the members of the common council favored the resolution, and so it could be passed over the mayor's veto under the provisions of the city charter, the plaintiff asked, as a part of his relief, after stating other facts to justify equitable interference, that the city of Brooklyn, its mayor and common council, be enjoined from voting and acting upon any resolution naming, altering or changing the route of the railway company, and from overriding or disapproving the mayor's veto. A temporary injunction to this effect was granted by the county judge of Kings county, and continued on the return of an order to show cause by the Supreme Court. This injunction was properly served upon each member of the common council, but notwithstanding, that body by a vote of two-thirds of its members, repassed the prohibited resolution over the mayor's veto. For this act seventeen of them were attached for contempt, adjudged guilty, and fine and imprisonment were imposed. The order of the court has been affirmed by the General Term, and comes here for final consideration.

It is met on the threshold by the respondent's motion to dismiss the appeal, and the question has its difficulties. The Revised Statutes distinguished, and the Civil Code preserves the distinction, between criminal contempts, and proceedings as for contempt in civil cases. As it respects disobedience to the orders of a court, the sole difference appears to be that a " wilful " disobedience is a criminal contempt, while a mere disobedience by which the right of a party to an action is defeated or hindered is treated otherwise. The conviction here was for a criminal contempt, the disobedience adjudged wilful, and the permitted punishment imposed. (Civil Code,

§§ 8 and 9.)   It is now said that from such a conviction there is no appeal, because it is not a civil but a criminal special proceeding.   It cannot be the latter, for the Code of Criminal Procedure does not recognize or provide for it.   That describes what are called "special proceedings of a criminal nature," but criminal contempts are not among them.   (Crim. Code, part 6, titles 1 to 11.)   They appear and are regulated in the Civil Code.   When they originate in the violation of an order, made, not by a criminal court, but by a civil court in a civil action, it is difficult to see how they can be any thing else than the special proceedings defined in the Civil Code as civil special proceedings.   That the wilful contempt is denominated "criminal" does not make the proceeding by a civil court, having before it a civil action, to protect its dignity and compel respect for its mandates, any the less a civil special proceeding.   If it is in a court having only civil jurisdiction, or on the civil side of a court having criminal jurisdiction also, it must be deemed a special proceeding within the meaning of §§ 1356 and 1357 of the Code of Civil Procedure, and § 190, subd. 3, which permit an appeal.   But where a criminal court makes an order in a criminal proceeding pending before it, which is disobeyed, the process by which it vindicates its authority must be held to be, as we decided in *People* v. *Gilmore* (88 N. Y. 627), not a special proceeding as defined in the Code of Civil Procedure.   Possibly in this latter class of cases there is no appeal.   If it is best that there should be, the attention of the legislature should be directed to the subject.   We, therefore, deny the motion to dismiss the present appeal.

The order is assailed on behalf of the defendants adjudged guilty of contempt on the ground that they were not parties to the action nor agents of the defendant, the city of Brooklyn, but acted in passing the resolution sought to be prohibited, not in their municipal capacity, but as independent agents of the State, and, therefore, were not bound by the injunction nor guilty of contempt in disregarding it.   Numerous authorities are cited as justifying this construction of their real relation and attitude, of which *Maxmilian* v. *The Mayor* (62 N. Y.

160; 20 Am. Rep. 468), and *N. Y. & Brooklyn Saw-mill & Lumber Co.* v. *Brooklyn* (71 N. Y. 580) are instances. But the question in every case of such character depends largely upon its own peculiar facts, and is determined by considerations not usually common to them all. The statute conferring the authority or imposing the duty, and the object and purpose sought to be accomplished, are alike to be considered in reaching the result. The charter of the Brooklyn Elevated Railway Company contained a legislative authority to build and operate their road upon certain streets and avenues in the city of Brooklyn specifically named; but the legislature, realizing that the city itself ought to be consulted, and might in view of its own interests and welfare, desire to change the route of the road, and dictate other streets for its occupation, conferred this privilege upon the municipality by giving it to the mayor and common council as the lawful and recognized agency through which the city could regularly act. The State might have dictated the route, and selected the streets absolutely and peremptorily, but it chose not to do so, and gave to the city the privilege, through its regular and constituted agents, of changing the streets to be occupied. When the mayor and common council acted upon this privilege, it was in performance of a municipal duty, one due to the city alone, and not at all to the State. The latter had acted and was contented. It named the streets for itself, and then practically said, if the mayor and common council, having in view the welfare and convenience of the city and its inhabitants, deem that such welfare and convenience will be promoted by substituting other streets, they may do so. When these authorities came to act, or decline to act, their sole duty was to the municipality which they represented. Its welfare and convenience was the only motive which could rightfully set them in motion, and dictate and determine the character of their action. When they spoke the city spoke, and they necessarily acted for the city and in its behalf. The form and characteristics of their action fully recognized this view of their duty. The common council passed the resolution naming the streets in the usual and ordinary way, and sent it to the mayor for

1882.]   THE PEOPLE ex rel. NEGUS *v.* DWYER.   **409**

Opinion of the Court, per FINCH, J.

his action. He returned it with a message of disapproval, and then the latter adopted it " notwithstanding the objections of his honor, the mayor, by a two-thirds vote." It was only under the city charter, and as a municipal act that this step could have been taken. In form, therefore, and in fact, the common council acted as the agents of the city and in its behalf, and the city being a party they were bound by the injunction.

We do not see how it helps the matter to say that passing the resolution was ineffectual, because the mayor's assent as a separate authority was indispensable. We cannot discuss that question. The defendants did exactly what the court enjoined them not to do. Whether the court acted wisely or unwisely, whether the thing they prohibited was important or unimportant, is not the question here. The order of the court, having jurisdiction and acting within its authority, was to be obeyed. It saw fit to prohibit the identical act which these defendants nevertheless did, and we cannot listen to a plea that the disobedience was harmless. That the act enjoined could do no harm if done, was a suggestion to be considered by the tribunal granting or refusing the injunction. That the act enjoined was a " nullity," which is also asserted, leaves the defendants, if they knew the fact, in the very hopeless situation of having violated the order of the court for the mere amusement of the thing, or by way of showing their contempt for the tribunal making the order.

But it is further said that the act enjoined was a legislative act and discretionary, and the court had no jurisdiction to prohibit it. But it had jurisdiction of the subject-matter of the action, as well as of the parties. " That public bodies and public officers may be restrained by injunction from proceeding in violation of law to the prejudice of the public or to the injury of individual rights cannot be questioned." (*The People* v. *The Canal Board,* 55 N. Y. 393; *Davis* v. *American Society, etc.,* 75 id. 369.) Whether the act sought to be enjoined was or was not of a legislative character was a judicial question, to be disposed of by the court, acting upon the facts, and it could prohibit action until it could investigate and finally

410          THE PEOPLE ex rel. NEGUS v. DWYER.          [Nov.,

Opinion of the Court, per FINCH, J.

decide the question. (*People* v. *Sturtevant*, 9 N. Y. 274.)
If the court erred in its conclusion the remedy was by appeal,
not by disobeying its mandate. While it is true that equity will
not ordinarily interfere with matters resting largely in the dis-
cretion of municipal authorities, yet where the threatened action
will produce irreparable injury, and consists in a disposition of
the public property by devoting it in part at least to the uses
of a private corporation, or where an illegal grant is threatened,
or the action attempted is corrupt and fraudulent and an abuse
of trust, cases are not wanting to sustain an interference by in-
junction. (High on Inj., § 403; *People* v. *Sturtevant, supra ;
People* v. *Mayor*, 32 Barb. 102; *Blake* v. *City of Brooklyn*,
26 id. 301.) It is not needful to consider these cases, or discuss
the general subject involved in their determination. It is
enough for the present purpose that whether the act enjoined
was or was not legislative or discretionary, and if so, whether
other facts still justified the interposition of equity, were
proper subjects for the consideration of the trial court whose
error, if any, could only be corrected by appeal. The com-
plaint distinctly alleged that the common council having once
before named other streets than those described in the charter
had no power or authority to do so again ; that their threatened
action was a grant to a private corporation of property of the
city without compensation; that instead of naming other
streets along the general route prescribed by the statute it made
that privilege a pretense for extending the road over most of
the city; that the resolution was drawn by the company's at-
torney, and was the product of a corrupt bargain between the
company and the majority of the common council; that the
road upon the new route would work great injury to the abut-
ting property owners, who could recover no compensation be-
cause the railroad company was bankrupt; and that the com-
mon council had no lawful right or authority to pass the reso-
lution. Upon these allegations we hold that the court had
jurisdiction to grant the injunction. Although issued by the
county judge it was none the less the mandate of the court.
(Code, § 606, § 3343; *Erie Railway Company* v. *Ramsey*, 45
N. Y. 646.)

Before the close of the hearing in the proceedings for contempt, an objection was taken on behalf of the defendants that it did not appear that the summons and complaint in the original action had been served on the city of Brooklyn, and the court thereupon ordered the proof of such service to be filed *nunc pro tunc.* It is now said that the arrest of the defendants was void on the papers, since they did not show that the city was a party, and so render the defendants liable as the agents of a party to the action, and that jurisdiction cannot be supplied *nunc pro tunc,* making proceedings valid which were previously void. The attachment was issued, however, upon not only the summons and complaint, but upon an affidavit of David Barnett entitled in the action and naming the city of Brooklyn as one of the defendants, in which the affiant says that " the action was commenced by the service of a summons and complaint on the defendants, and on the members of the common council on the 27th day of December last past." The original papers, therefore, did show that the city of Brooklyn had been served with the summons and complaint, and so was a party to the action, and the formal proof of such service filed *nunc pro tunc* merely supplied additional and more accurate evidence of the fact.

We discover no error in the record, and the order should be affirmed with costs.

All concur except TRACY, J., absent.

Order affirmed.