Freedman, J.
— This is an application on behalf of the plaintiffs that the defendant Franklin Edson be punished for a contempt of this court in willfully disobeying and violating an order of injunction heretofore granted in this action by the Hon. Miles Beach, a judge of the court of common pleas for. the city and county of New York, by which the said defendant, as mayor of the city of New York, was enjoined and restrained from appointing to, or nominating for, the office of commissioner of public works, or the office of counsel to the corporation, any person until the further order of this court.
A copy of the said order of injunction, together with a copy of the bond or undertaking given by the plaintiffs on its procurement, and a copy of the summons in the action, accompanied by copies of the affidavits on which the order was granted, having been duly served on the defendant on the 30th day of December, 1884, n.o question arises as to the jurisdiction of the court over the person of the defendant, provided there was jurisdiction in other respects. Since the service thus made the question whether the injunction should be continued during the pendency of the action was elaborately argued before the Hon. Charles H„ Trhax, at a special term of this court, and that learned judge decided that the motion for the continuance of the injunction should be denied and that the preliminary injunction should be dissolved {Ante 205).
This decision is no bar to the present application. During the existence of the injunction the' defendant was bound to obey it, unless it was not merely voidable but absolutely void, for the reason that it was made without any jurisdiction whatever. Chancellor Walworth, in The People agt. Spaulding *234 (2 Paige, 326), said: “ While the injunction remained in force it was the duty of the vice-chancellor to punish every breach thereof; and in no case can a defendant be permitted to disobey an injunction regularly issued, whatever may be the final decision of the court upon the merits of the cause. If there is not sufficient equity upon the face of the bill to support the injunction the proper course for the defendant is to apply at once for a dissolution.” A party, therefore, will be in contempt for breach of an injunction, if the officer allowing it had jurisdiction, notwithstanding that it was erroneously ■ granted, and for an insufficient cause (Sullivan agt. Judah, 4 Paige, 444; Davis agt. The Mayor, &c., 1 Duer, 451; The People agt. Sturtevant, 9 N. Y., 263; The Erie Railway Co. agt. Ramsey, 45 N. Y., 637; The People agt. Dwyer, 90 N. Y., 402).
But although the decision referred to is no bar, the grounds upon which it was made are important elements to be considered. In making that decision judge Truax, in a carefully prepared opinion, reached, in substance, the following conclusions, viz.: 1. That in a proper action, brought by the proper party and upon sufficient facts properly presented, an injunction restraining the making of an illegal or corrupt appointment to a public office by the mayor of the city of-New York may be issued. 2. Than the facts presented by the affidavits in this case did not warrant an injunction restraining the mayor from making any appointment or nomination, but only an injunction restraining the appointment or nomination and the confirmation by the board of aldermen of a particular individual, viz., Fitz-John Porter; and 3. That because the papers upon which the injunction was granted were unaccompanied by a complaint, and because the action was one in which the right to injunctive relief must appear from the complaint, the preliminary injunction which restrained the appointment or nomination of any person should be vacated entirely.
The interests of an orderly administration of justice, as well *235 as judicial custom and tradition, require that in the absence of proof of a clear mistake or oversight, or of new and additional facts calling for a change, I should, while sitting at special term, respect and follow these conclusions. A careful examination of the facts now made to appear, and due reflection upon the arguments of the learned counsel for the respective parties, have failed to present to my mind a sufficient reason for a departure from the usual course. I shall .therefore, in the disposition to be made of the present application, adopt the conclusions reached by judge Teuax as far as they go. But they do not determine the question whether the learned judge of the court of common pleas who granted the preliminary injunction had jurisdiction to grant that particular injunction.
Upon this point it is claimed, in the first place, that the injunction was null and void because the learned judge who granted it was not and is not a judge of this court, but of the court of common pleas, and because the only authority which prescribes by whom an order of injunction may be granted is contained in section 606 of the Code of Civil Procedure. Under that section an injunction order may be granted: (1) By the court in which the action is brought, (2) or by a judge thereof, (3) or by any county judge.
In the Matter of Morgan, &c. (56 N. Y., 629) and in Lang agt. Brown (6 Hun, 256) it was held that the judges of the court of common pleas are county judges for certain purposes, and in Wood agt. Kelly (2 Hilton, 334) it was pointed out that they possessed all the powers of county judges. The reasons which prevailed in these cases would require me to hold that a judge of the court of common pleas is a county judge within the meaning of section 606, if that section were, as claimed, the only authority which specifies the officers who may make such an order. But such is not the fact. The section itself commences with the words, “ except where it is otherwise specially prescribed by law.” Section 772 makes further and special provision to the effect that where an order *236 in an action may be made by a judge of the court out of court, it may be made by any justice of the. supreme court, or by any judge of a superior city court within the city wherein his court is located, or by the county judge of the co.unty where the action is triable or in which the attorney for.the applicant resides. This disposes of the claim, so far considered, for the concluding part of the section prescribing the manner in which ’ an order thus made, in case it grants a provisional remedy, may be vacated or. modified, clearly shows that the order referred to includes any order granting a "provisional remedy, and a preliminary injunction is a provisional remedy. In addition to all this, it may yet be pointed out that section 277 provides that in an action or- special proceeding brought in a superior city court, an order may be made without notice, or an order to stay proceedings may be made upon notice, by the county judge of the county where the court is situated, or of the county where the attorney for the applicant resides, in a case where a judge of the superior city court might make the same out of court and with like effect.
In the next place the defendant claims that the injunction was null and void under section 1809, which is as follows, viz: “ An injunction order suspending the general and ordinary busines of a corporation, or of a joint-stock association, consisting of seven or more persons, or suspending from office, or restraining from the performance of his duties, a trustee, director or other- officer thereof, can be granted only by the court upon notice of the application therefore to the proper officer of the corporation or association, or to.the trustee, director or other officer enjoined. If such an injunction order is made otherwise than as prescribed in this section, it is void.”
This section is contained in article-5 of title 2 of chapter 15 of the Code of Civil Procedure. Title 2 of this chapter is entitled “ Actions relating to a corporation,” and the different articles of this title are respectively entitled as follows, viz.:
Article 1. Action by a corporation, and against a corporation, to recover damages or property.
*237 Article 2. Judicial supervision of a corporation, andóf tlie - officers and members thereof.
Article 3. Actions to procure the dissolution of a corporation, and actions to enforce the individual liability of the officers or members of a corporation, with or without a dissolution thereof.
Article 4. Action by the people to annul a corporation.
Article 5. Provisions applicable to two or more of the actions specified in this title.
Section 1804, which is the first section of article 5, provides that articles 2, 3 and 4 of title 2 do not apply to an incorporated library society; to a religious corporation; to a select school or academy incorporated by the Regents of the University, or by an act of the legislature, or to a municipal or other political corporation created by the constitution, or by or under the laws of the state.
From this it would seem as if sections 1804 to 1813, contained in article 5, were left so as to include a municipal corporation. But the provisions of article 5 are defined in the title of said article to be applicable only to two or more of the actions specified in title 2. Row, all the actions specified in that title (except those mentioned in sections 1778, 1779 and 1780, in article 1, which relate to actions against foreign corporations, and to an action against a domestic corporation, on a promissory note or other evidence of debt) are specified in articles 2, 3 and 4, and concerning these articles it is expressly enacted, as already stated, that they shall not apply to a municipal corporation. Sections 1805, 1806, 1807 and 1808 of article 5 refer expressly to actions brought as prescribed in articles 2, 3 and 4. Section 1810 provides for the appointment of receivers of corporations. Section 1812 contains express limitations on the application of section 1809, and both these sections are taken from chapter 151 of Laws of Í870, a reference to which shows that it was meant to refer to business corporations only. The limitation contained in section 1812 requires that the application of section *238 1809 shall be confined to corporations, or joint-stock associations created by or under the laws of this state, and to the trustees, directors or other officers of such corporations. The corporation known by the title of “ the mayor, aldermen and commonalty of the city of New York” was not in any sense created by or under the laws of the state of New York though it is now subject to such laws. It was created by and under crown charter still largely in force and effect.
It therefore clearly appears that section 1809 does not apply to the corporation of the city of New York, nor to any officer thereof. But even if it did it would only, as I am inclined to think, prohibit the granting, without previous notice, of an injunction which, when granted, would operate as a suspension of the general and ordinary business of the corporation, or as a total suépension from office of an officer thereof, or as a total restraint upon the general performance of the duties of such an officer.
The injunction in the case at bar was not of that character. It only restrained the exercise of a single power or duty out of many, and it left the general and ordinary business of the corporation, if a municipal corporation can be deemed to have a general and ordinary business within the true meaning of these words as used in section 1809, undisturbed, and the mayor unrestrained in the performance of his other multifarious powers and duties. In this connection it may be well to point out that chapter 531 of the Laws of 1881, which will be more fully considered hereafter, expressly authorizes the granting of an injunction against any officer of a municipal corporation to prevent any illegal official act.
In the third place the defendant claims that the injunction was null and void, for the reason that the facts presented by the affidavits did not warrant an injunction restraining the mayor from making any appointment or nomination, but at most only an injunction restraining the consummation of the appointment and the confirmation of such appointment by the board of aldermen of a particular individual, viz., general *239 Fitz-John Porter. That the affidavits contained competent proof only to such a limited extent has been expressly decided by judge Teuax. But from that it does not follow that the injunction, though too broad, was without jurisdiction.
The papers presented on the application for the injunction showed that the action was brought under chapter 531 of the Laws of 1881, entitled “An act for the protection of tax-payers.” This 'statute provides that all officers, agents, commissioners and other persons acting for and on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, may be prosecuted, and an action or actions may be maintained against them to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to any property, funds or estate of such county, town, village or municipal corporation by any person whose assessment or by any number of persons jointly the sum of whose assessments shall amount to $1,000, an-d who shall be liable to pay taxes on such assessment or assessments in the county, town, village or municipal corporation to prevent the waste or injury of whose property the action is brought, or who have been assessed or paid taxes therein upon an assessment or assessments of the above named amount within one year previous to the commencement of any such action or actions.
This statute took the place of chapter 435 of the Laws of 1880, which it repealed. The act of 1880 amended chapter 526 of the Laws of 1879, which amended chapter 161 of the Laws of 1872, which was the first of the so-called tax-payers’ acts. The act last referred to conferred upon certain taxpayers therein described the right to prosecute all officers and agents acting for and on behalf of any county, town or municipal corporation in order to prevent waste or injury to any property, funds or estate of such county, town or municipal corporation. By the act of 1881 all officers and agents of villages were included and the right of action enlarged so as to enable the complaining tax-payers not only to prevent *240 the waste or injury referred to, but also to restrain any illegal official act. Upon furnishing, as required by said act, a bond to the defendant in the action, to be approved by a judge, and a copy of which is to be served with the summons, the plaintiff or plaintiffs in such an action may have an injunction to accompany the summons.
In the case at bar a bond drawn in conformity with the requirements of the statute was submitted to judge Beach with the summons in the action and certain affidavits. These affidavits, as already stated, contained sufficient competent proof to authorize an injunction restraining the consummation of the appointment, and the confirmation of such appointment by the board of aldermen, of general Fitz-John Porter as commissioner of public works. But that was not all. They also contained many allegations having the appearance of allegations of fact to the effect that, in furtherance of a corrupt bargain and combination, the nomination of general FitzJohn Porter to the board of alderman would be withdrawn by the mayor, and that thereupon, in furtherance of a corrupt bargain or understanding, the defendant, as mayor, would illegally make, and the board of aldermen illegally confirm, nominations for the office of commissioner of public works and the office of counsel to the corporation, and that under no circumstances honest nominations were to be made.
Upon the papers thus presented and their contents, judge Beach was called upon to determine whether an injunction of some sort should issue, and if so to what extent, or whether the motion for an injunction should be denied altogether. If he had jurisdiction to make the determination, he had jurisdiction to act further in the premises.
How, the act of 1881 expressly authorizes a county judge to make such a determination and to act upon it. If therefore judge Beach possessed no other power than the powers of a county judge acting exclusively under and by virtue of the authority vested in him by the act of 1881, which is hardly the case, he had at least jurisdiction to that extent. The same *241 reasons which required me to hold that he was and is a county judge within the meaning of that term as used in section 606 of the Code, call for the conclusion that he was and is a county judge within the meaning of that term as used in the statute of 1881.
The inevitable consequence is that, inasmuch as he had power to determine the application and to act further in the premises after having determined that the plaintiffs were entitled to injunctive relief of some sort, jurisdiction attached to the order as finally granted. The authorities «upon this point are quite conclusive.
In The People agt. Sturtevant (9 N. Y., 263) it was held that on an appeal from a commitment for contempt in disobeying an injunction, the question of jurisdiction does not-involve the inquiry whether the case made by the complaint entitled the plaintiffs to relief, but only whether the court had power to decide whether it entitled them to relief or not.
In Hunt agt. Hunt (72 N. Y., 217) it was held that jurisdiction over the subject-matter of an action does not depend upon the ultimate existence of a good cause of action in the-plaintiff in the particular case. Jurisdiction is the power lawfully conferred to deal with the general subject involved-in the action.
In Lange agt. Benedict (73 N. Y., 12), Folger, J., says r “What is meant by jurisdiction of the subject-matter we have had occasion to consider lately in Hunt agt. Hunt (72 N. Y., 217). It is not confined within the particular facts, which must be shown before a court or a judge, to make out a specific and immediate cause of action; it is as extensive as the general or abstract question which falls within the power of the tribunal or officer to act concerning. * * * It
is the general abstract thing which is the subject matter. The power to inquire and adjudge whether the facts of each particular case make that case a part or an instance of that general thing, that power is jurisdiction of the subject-matter.”
In the Mayor, &c., of New York agt. New York and *242 Staten Island Ferry Company (64 N. Y., 622) it was held that an injunction order, though more extensive in its restraints than the prayer of the complaint, is not for that reason void but must be obeyed. And in the case of the Atlantic and Pacific Telegraph Company agt. Baltimore and Ohio Railroad Company et al. (46 N. Y. Supr. Ct. R., 377) it was held that the fact that an injunction is too broad and restrains the doing of acts which the court has no jurisdiction whatever to restrain, as well as acts over which the court has jurisdiction, is no excuse for the violation of the injunction by the doing of the acts over which there is jurisdiction.
In view of these authorities it can make no difference in the case at bar, so far as the question of jurisdiction is concerned, .that the order of injunction as granted was too broad, or that the learned judge who granted it erred as to the measure of relief thereby granted, or that it was subsequently determined .on a hearing of all parties, and a thorough inspection and •examination of the papers and a seaching analysis of their .contents, that no injunction should have been granted.
In the fourth place the defendant claims that the injunction ■was null and void because no complaint accompanied the papers ¡upon which it was granted. As already stated this failure to include a complaint constituted the ground upon which the injunction was vacated by judge Tuuax. But did it constitute a jurisdictional defect %
The Code of Civil Procedure provides that a temporary injunction may be granted by order: 1. Where it appears from the complaint that the plaintiff demands and is entitled to a judgment against a defendant restraining the commission •or continuance of an act, the commission or continuance of which, during the pendency of the action, would produce injury to the plaintiff (sec. 603); and 2. Where it appears by affidavit that the defendant, during the pendency of the action, Is doing, or procuring or suffering to be done, or threatens, or as about to do, or to procure or suffer to be done, an act in *243 violation of the plaintiff’s rights, respecting the subject of the action, and tending to render the judgment ineffectual, &c. {See. 604).
Thus, in a case under section 603, the right to an injunction depends upon the nature of the action and is to appear from the complaint, while in a case under section 604 the right to an injunction is extrinsic to the cause of action and is to appear by affidavit. The consequence is that even if, in all cases falling within section 603, the presentation of a complaint drawn up in due form were necessary, the court or judge, upon an application for an injuction, would have to determine whether the particular action in which the application is made falls within section 603 or 604, and to determine the necessity of a formal complaint accordingly. If then there be jurisdiction of the subject-matter of the action, within the rule heretofore ascertained, an erroneous decision as to the necessity of a formal complaint would not deprive the court or judge of jurisdiction in the absence of an express statutory provision declaring void all acts done under or in consequence of such erroneous decision. Ho such statutory provision exists. On the other hand it should be considered that under section 416 an action is commenced by the service of a summons alone; that under section 399 an attempt to commence an action in a court of record is, in certain cases, equivalent to the commencement thereof against each defendant when the summons is delivered, with the intent that it shall be actually served, to the sheriff; that section 607, in general terms and without limitation or qualification, prescribes that an order of injunction may be granted where it appears to the court or judge by the affidavit of the plaintiff or any other person that sufficient grounds exist therefor; and that section 608, in express and general terms, and without limitation or qualification, provides that the order may be granted to accompany the summons, or at any time after the commencement of the action and before final judgment.
In construing these provisions together and giving due force *244 and effect to each and every one of them, but keeping at the same time in mind the principles which determine the question of jurisdiction over the subject-matter of an action, the conclusion is inevitable that while in a case falling within section 603, which undoubtedly applies to the case at bar, the court or judge as a matter of .orderly practice should insist upon the presentation of a formal complaint at the time of the application for an injunction, a failure to do so on granting the injunction though it may constitute ground for a subsequent motion to vacate, is not a jurisdictional defect which renders the injunction ipso facto void.
Section 603 was taken from the first paragraph of section 219 of the first Code, which also demanded that the right to injunctive relief should be apparent from the complaint. In a number of cases which arose under that provision, the courts differed as to the necessity of a formal complaint to sustain the injunction. But while in some such necessity was insisted on, it was held in Morgan agt. Quackenbush (22 Barb., 72), and by the general term of the supreme court in Mattice agt. Gifford (16 Abb., 247), that the requirement that the right to injunctive relief should appear from the complaint was sufficiently complied with when it was made to appear by affidavit what the allegations of the complaint in that respect were or would be. These two cases were never overruled, and even in the cases in which the contrary was held, nothing can be found which is in direct support of the claim that an injunction granted in the absence of a formal complaint was for that reason alone null and void, because made without jurisdiction. As already shown the Oode of Oivil Procedure left the question where it stood before.
Upon the whole I am of the opinion that while judge Tbtjax had the power to vacate the order of injunction for the reason that the proper practice had not been observed by the plaintiffs in the procurement of it, judge Beach was not without jurisdiction in granting it. The order therefore was 'not null and void ah initio.
*245 The examination so far made sufficiently establishes that in every aspect that can be taken of the case judge Beach had sufficient jurisdiction to grant an order of injunction in it, and that consequently the injunction he granted was valid in law as long as it remained in force, and that the defendant had no right to disobey it. The question of propriety arising from the fact that the learned judge referred to made an order in an action about to be commenced in this court without any proof before him that the judges of this court were inaccessible, does not in anywise impair his jurisdiction in the premises. And the order having been made in the exercise of jurisdiction which attached, it became by operation of law the lawful mandate of this court, just as in the case of 1 he People agt. Dwyer (90 N. Y., 402), the order of the county judge became the lawful mandate of the supreme court.
The matters thus established fully dispose of the complaint made by the defendant, that the granting of the injunction was an enormous abuse of the judicial power. But as this complaint was not only indorsed, but also seriously and warmly pressed, by the learned counsel for the defendant in a manner which aroused public attention and great public interest, some additional remarks are called for.
In this country the security of life, liberty and property depends upon the respect which is paid by all classes to the law, and everything and everybody is in some form or other subject to the law. Municipal corporations constitute no exception. Though perhaps the action of the mayor of the city of New York in the matters relating to the appointment of such officers as he has the power to appoint, is not so much the exercise of a privilege or franchise, as judge Tbuax seems to have held, as the exercise of a power and duty conferred and imposed by statute, it is nevertheless, a power and a duty of a kind which, not being of a legislative character, has at all times, on the application of a party individually aggrieved, been subject to judicial scrutiny, not for the purpose of *246 directing it affirmatively, but to prevent abuse. This fully and clearly appears from the decisions in Davis agt. The Mayor, &c. (1 Duer, 451); The People agt. Compton (Id., 512); The People agt. Sturtevant (9 N. Y., 263); The People agt. Dwyer (90 id., 402).
Even state officers constitute no exception to the rule. They may be enjoined in a proper case from the performance of their duties or from executing the' provisions of a statute, and, if the case is a proper one, all that the law requires is that the injunction shall be granted by the supreme court, at a general term thereof and upon notice to the officer or board to be restrained {Code of Civil Pro., see. 605).
Since the decisions in Davis agt. The Mayor, The People agt. Compton and The People agt. Sturtevant, and with full knowledge thereof as must be assumed, the legislature passed the so-called tax-payers’ acts hereintofore referred to, and by them extended the right of action against municipal corporations and the officers therein specified, to a class of plaintiffs who represent no special private grievance, but only one which they have in common with all others belonging to .or falling within the same class. This at once disposes of all the objections raised by the defendant to the standing of the plaintiffs in court. "Upon an examination of these acts it will be found that since 1872, when the first of these acts was passed, the right of action itself was greatly enlarged. Originally the right of action given by the act of 1872 extended only to the prevention of waste or injury to corporate property or funds. In 1881 it was so far extended as to include the prevention of any illegal act. As the right of action was thus enlarged, the duty imposed on the courts to grant injunctions was correspondingly increased. The courts did not seek this increase of jurisdiction. They were not even consulted about it. If it is not proper that they should have it, the legislature may and ought to take it away again. At all events the remedy is with *247 the legislature, and all complaints on that score should be addressed to that body. While the duty remains cast upon the courts to entertain such suits, and to grant injunctions therein, they are bound to obey the will of the sovereign power of the state in the premises. All they can do is to require full and competent proof, and to hold plaintiffs to strict practice. The officers of municipal corporations, and all other officers covered by the acts referred to, will do well hereafter to bear these matters in mind and to regulate their official conduct accordingly.
Having shown that the order of injunction was valid and that it should have been obeyed, it now becomes material to inquire into its violation and the manner in which and the circumstances under which it was violated.
It was served with the other papers hereinbefore enumerated upon the defendant as mayor, and upon each of the other defendants herein who were aldermen, on the 30th of December, 1884. Un the same day the bond given by the plaintiffs and approved by judge Beach was filed in the county clerk’s office. The injunction enjoined and restrained the appointment or nomination, and the confirmation of any nomination, of any person to the office of commissioner of public works or the office of counsel to the corporation until the further order of this court to be made and entered upon a hearing to be had the next day, namely, December 31, 1884, at eleven o’clock in the forenoon of that day, at a special term of this court. At the time and place specified the motion for the continuance of the injunction was duly argued on behalf of the plaintiffs, and opposed on hehalf of the defendant Edson, as well as on behalf of certain others of the defendants, before judge Tbhax, as already stated. The defendant Edson offered no proof in denial of the charges made against him. Some of the aldermen did. The arguments on the motion were concluded at four p. m., on the 31st of December, 1884, and the judge reserved his decision. Thereupon, a little later on the same day, and before any decision had been rendered, the *248 defendant Edson sent to the board of aldermen, then in session, the following official message, viz.:
“ Mayor’s Office, )
“Mew Tore, December 31, 1884.')
“ To the Honorable the Board of Aldermen :
“ I am advised by the counsel assigned me by the counsel to the corporation that the injunction served upon myself in the case of Roosevelt and others agt. The Mayor and Aider-men, restraining my nomination, to your honorable body of persons to fill the vacancies now existing in the public offices of this city is void.
“ I therefore send you the accompanying communications.
“FRAMKLIM EDSOM, Mayor P
In the accompanying and some subsequent communication the defendant withdrew the name of Fitz-John Porter as commissioner of public works and nominated and appointed Rollin M. Squire to be commissioner of, public works and William Dorsheimer to be counsel to the corporation. The board of aldermen confirmed the nomination of Squire and rejected the nomination of Dorsheimer.
This action was a direct violation of the order of injunction, and by such violation the object of the action and the plaintiffs’ remedy herein have been wholly defeated, at least so far as the office of commissioner of public works is1 concerned. The next inquiry, therefore, must be whether the defendant Edson has established any excuse of which the law can take cognizance. He admits that he took the action complained ■of, but insists that in taking it he was not actuated by any intention of violating any legal order of this court, or of any judge thereof, or of any judge having authority to make the •order of injunction. This is mere legal quibbling. The order served upon him, as already shown, was legal; it was the mandate of this court, and the action taken by him was a direct violation of it. Hnder these circumstances the rule must be enforced which is elementary and alike applicable to *249 civil and criminal proceedings, that every man is conclusively presumed to foresee, and consequently must be held responsible for, the direct and natural consequences of an act purposely done.
He says that vacancies existed in the office of commissioner of public works and the office of counsel to the corporation, which, under the statute, it was his duty to fill. The offices were not actually vacant. The incumbents held over until their successors should be lawfully appointed. It was no more his duty to fill such vacancies than it was the duty of the judge under another statute, upon a proper application, and upon proof that the action proposed to be taken by the defendant was corrupt and consequently illegal, to restrain him from filling them. Each had a duty to perform and each had rights which the other was bound to respect. Of course a long list of cases may be cited in which the courts have said that a court will not interfere with the exercise of a discretionary power lodged by law in a public officer by substituting its own judgment for his, and the cases cited by the learned counsel for the defendant belong to this class. But what was thus said, was said after an actual interference to an extent which, upon examination, satisfied the court that it ought not to interfere any farther; and even then, in the majority of cases at least, the concession was made that if the evidence had been strong enough to establish the necessity for further interference to prevent abuse, injustice, oppression, the violation of a trust, or the consummation of a fraud, the court would have had the power to proceed farther and would have exercised the power. These cases simply hold that courts will not restrain the erroneous exercise of discretion lodged by law in a public officer as long as he acts honestly, and they therefore do not apply to a corrupt and illegal exercise of discretionary power. They are all cases which occurred prior to 1881, and they do not affect the question of jurisdiction which is decisive in the case at bar. Eor present purposes it is sufficient to say that if no power whatever had ever existed *250 in a court of equity prior to 1881 to restrain the corrupt and illegal exercise of discretionary power vested in a public officer, it was expressly conferred by the statute passed in that year.
He says that his term of office as mayor expired on the 31st of December, 1884, and that he could not wait until the rendition of a decision upon the motion heard on that day. From the report of the case of The People agt. Compton et al. (1 Duer, 512), it appears that in that case alderman Sturtevant made a similar plea (p. 529) and that it did not avail him-. Moreover, in the present case, the situation of affairs on the 30th and 31st days of December, 1884, was in a great measure created by the defendant himself. The vacancies occurred on December 10, 1884. By delaying decisive action until the very close of his term, the defendant had aroused public suspicion that he had' other motives than a regard for the interests of the municipality he represented.
He says that he was advised by counsel and believed that the order of injunction was null and void, and that he acted upon such advice and belief. That this is' not an answer to the proceeding for contempt has been repeatedly held (Hawley agt. Bennett, 4 Paige, 163 ; Rogers agt. Paterson, Id., 450 ; Lansing agt. Easton, 7 id., 364; The People agt. Compton, 1 Duer, 512). Upon this point Dueb, J., in pronouncing the judgment of the court in the case last referred to, said : “While upon this subject, we deem it necessary to observe that the advice of counsel, when stated in general terms, as it here is, will never be accepted by this court as excusing or palliating a contempt which is otherwise manifest or, proved. The advice, when thus stated, will never be permitted to affect our decision. To enable us to regard it at all, the names of the counsel must be given and the information that was laid before them, and the exact import of their advice be fully stated. If the advice was written, the writing must be produced; if oral, the fact that it was given, and its precise import, must be verified by the affidavits of the conn *251 sel who gave it. The propriety of these rules and the necessity of adhering to them will be doubted by none who have any knowledge of the difficulties that beset a court in the due administration of its justice and of the means too frequently employed, by a suppression of truth, to evade its authority.”
And as to the belief of a party proceeded against, the learned judge referred to, said : “ He who resists the order or process of a court of justice, trusting to his own belief of its want of jurisdiction, acts, in all cases, at his own peril, and when he is proved to be mistaken is, in all cases, justly punished. And I add that it is upon this principle alone that the supremacy of the law, and the just authority of courts of justice can be maintained.”
The defendant now here advances the excuse that he acted under the advice of counsel in general terms only. The precise import of the advice, and the grounds upon which it was given, are not clearly set forth. It does not appear whether the advice was in writing or oral, and neither writing nor affidavit by counsel has been submitted. Under these circumstances the case is fully controlled by the authorities cited. The most I can do is to consider the fact that the advice was given as claimed and believed, and as an extenuating circumstance to be considered in meting out punishment.
The defendant, by way oi excuse, reiterates the fact that the injunction was subsequently vacated by judge Tbuax. From what I said in the beginning as to the effect of this decision upon the present motion, it sufficiently appears that the claim cannot be accepted as a valid excuse for a deliberate violation of the injunction while it was alive, and mere repetition would answer no useful purpose.
And finally the defendant, in his affidavit, says that, in bringing the action, the plaintiffs were actuated by improper motives, and in this connection he denies that on the hearing before judge Tbuax he omitted to deny, viz., the truth of all the charges of corruption and illegality made against him *252 in the affidavits upon which the injunction was granted. He. thus seeks, at this late day, to raise an issue as to the real merits of the action. That this cannot be done, I think I so clearly demonstrated, both upon principle and authority, in the course of my discussion of the question of jurisdiction, that no further remarks are - necessary. The result is that none of the excuses that have been advanced and considered has any force or validity in law.
Before proceeding to a final adjudication, however, it becomes necessary to pause for a moment to notice the distinction between criminal attempts, and proceedings as for contempt in civil cases, and to consider what remains to be done. The Revised Statutes made, and the Code of Civil Procedure preserved, such distinction. In The People agt. Dwyer (90 N. Y., 402), Finch, J., says upon this point: “ As it respects disobedience to the order of a court, the sole difference appears to be that a ‘ willful ’ disobedience is a criminal contempt, while a mei’e disobedience by which the right of a party to an action is defeated or hindered is treated otherwise.”
A very thorough and elaborate discussion of the same question, as it stood under the Revised Statutes, may be found in The People agt. Compton (1 Duer, 512).
Proceedings for contempt are now regulated by the Code of Civil Procedure. In addition to the distinction already pointed out a further distinction is as follows : In a proceeding as for contempt of court other than a criminal contempt, if an actual loss or injury has been produced to a party by reason of the misconduct of the offender, a fine sufficient to indemnify the aggrieved party must be imposed upon the offender;. but where no actual loss or injury has been shown, the fine which may be imposed must not exceed the amount of the complainant’s costs and expenses, and $250 in addition thereto (Seo. 2284). In a proceeding to punish for a criminal contempt the punishment may be by fine not exceeding $250, or by imprisonment not exceeding thirty days in the county jail, or both, in the discretion of the court (See. 9).
*253 In the case at bar the plaintiffs do not claim that they sustained any actual loss or injury. Their motion is that the defendant be punished for a criminal contempt under subdivision 3 of section 8, which makes “ a willful disobedience to its lawful mandate ” a contempt of court.
Upon such a proceeding the party charged must be notified of the accusation, and have a reasonable time to make a defense (Seo. 10). To bring him before the court one of two methods of proceeding must be adopted, viz., he must be brought in either by and under an attachment to answer for the alleged contempt, in which case interrogatories must be filed to be answered by him ; or by an order duly served upon him requiring him to show cause why he should not be punished for the alleged offense, in which case the question is determined upon affidavits (Seo. 2269).
The defendant now here was personally served with the order requiring him to show cause why he should not be punished for the violation of the injunction, and' with the affidavits and other papers upon which the said order was made. He appeared, submitted his proofs and was heard in opposition. Under these circumstances it is not necessary that he should be brought once more into court on air attachment, and that interrogatories should be administered to him prior to a final adjudication upon the contempt charged against him (The Mayor, &c., of N. Y. agt. The N. Y. & Staten Island Ferry Co., 64 N. Y., 622).
Having arrived at this point the case is now ripe for a final adjudication.
The defendant deliberately chose to place himself towards this court in a relation of direct and open hostility. Admitting the service of the order of injunction upon himself which, upon its face, showed that it was granted in an action brought in this court, and correctly construing it as commanding him to desist from filling the vacancies in the two offices referred to, he chose to treat it as an illegal assumption of judicial authority, and thereupon he proclaimed in' an *254 official message to the board of aldermen that it was void. All this was done in the face of an express provision of law, that the jurisdiction of this court, in an action or a special proceeding brought therein, must always be presumed (Code of Civil Pro., sec. 266). He thus publicly raised an issue with this court, which this court is compelled to meet and to determine. For obvious reasons it would be desirable were it possible that such issue should be determined by some other tribunal. But as no such transfer can be made of the jurisdiction of this court, I have no right to shrink from the performance of the duty which the law casts upon me.
Hone of the excuses advanced by the defendant having any force or validity in law, and all his objections, both of form and substance, having been found untenable, and nothing appearing which could furnish a respectable apology for the omission of the court to take such notice of the defendant’s misconduct as is due to the interests of the public and to a proper administration of justice, the defendant, for the reasons hereinbefore stated, must be adjudged to have been guilty of a willful disobedience to the lawful mandate of this court in deliberately violating the order of injunction served upon him, and consequently guilty of a criminal contempt of this court. And now it becomes my painful duty to decide what the punishment shall be. In the performance of that duty I deem it fit and proper to recall to mind from the sterling remarks made by judge Doer in the Compton case the following sentences, viz.: “ Our country is great, flourishing and prosperous, because the people has at all times, in the exercise of its own sovereignty, been accustomed and has rejoiced to confess the sovereignty of the law as limiting and controlling its own. It is so because we long have- been, still are, and I trust will ever remain, a law-reverencing; law-obeying and law-abiding people. But it is manifest that this deep reverence for the law, this prompt and cheerful submission to its dictates, this fixed resolve to, abide its determinations, by which as a nation we have- hitherto- been distinguished, are insepara *255 bly connected with the confidence which is reposed in those by whom the law is administered, and can, in reality, subsist no longer than while that confidence is felt and maintained. Hence, none are more dangerous enemies to our country and its institutions, by whatever pretext they may seek to veil their conduct, than those who seek to destroy or impair this necessary confidence 'by rash denunciation, groundless imputations, open disrespect and public disobedience. The inevitable tendency of such proceedings is to weaken and unsettle our government in its very foundations, and in every branch of its administration. They strike at the root of our national prosperity, and poison and corrupt the fountain from which all our blessings flow, the supremacy of the law, manifested and sustained by the ready submission of all to its dictates and authority.”
The evil example thus referred to is, as was said by judge Boswobth in the same case, still more pernicious in its. tendency when set by a man invested with authority who, by virtue of his office, is a conservator of the public peace.
The defendant, as mayor, was the chief executive officer of the corporation of the city of New York. He was elected to that high office by the votes of a majority of the electors of this great city. He, above all others, should have set an example of devotion and submission to the supremacy of the law as administered by the tribunals created by the sovereign power of the state for that purpose. Occupying such a high position, his willful and public disobedience to the positive mandate of a court of general jurisdiction is an act of far-reaching consequences. Under these circumstances, and inasmuch as neither the sentence by this court in the Compton case of alderman Sturtevant to imprisonment for fifteen days and the payment of a fine of $250 into the city treasury, and of a further fine of $102.07 to the relators for their costs and expenses, nor the sentence by the supreme court in the Dvryer case of each of the seventeen aldermen to imprisonment for thirty days and the payment of a fine* of $250j. *256 deterred the defendant from, defying the authority of this court, the case demands the infliction of the highest punishment authorized by law, unless mitigating circumstances can be found that can properly be considered.
Upon this point I have, after due deliberation, come to the conclusion that some of the matters urged as an excuse, but rejected as insufficient in law for that purpose, ought to be accepted in mitigation. The fact cannot be denied that the order of injunction was granted under circumstances which made it difficult to ascertain whether there was or was not jurisdiction, and upon being advised by counsel that the order was void, the defendant may well have believed it. Moreover the practice of the plaintiffs themselves in obtaining the injunction, was so faulty and irregular as to letid color to the theory that the order was invalid. Upon the whole I am charitable enough to think that the defendant actually believed that the order was void.
But after giving to the defendant the fullest benefit of every extenuating consideration that can be presented, the case still remains one which calls for substantial punishment.
I therefore direct that for the willful disobedience, and the contempt of which the defendant stands adjudged guilty, he be imprisoned in the county jail for the period of fifteen days, ■and that, in addition thereto, he pay a fine of $250.
And I further direct that the order to be entered, and the commitment to be issued, be presented for settlement on a notice of two days to the attorneys for the defendant.