THE PEOPLE, on the relation of DAVIS and PALMER, *against* STURTEVANT.

An action commenced in the superior court of New-York by individual corporators of that city against the mayor, aldermen and commonalty, asking for an injunction restraining the defendants from granting the right to construct a certain railroad in the city, is within the jurisdiction of that court both as to parties and subject matter; and that court has also jurisdiction to grant the injunction sought.

On an appeal from a commitment for contempt in disobeying an injunction so granted, the question of jurisdiction does not involve the inquiry whether the case made by the complaint entitled the plaintiffs to relief, but only whether the court had power to decide whether it entitled them to relief or not.

An injunction granted in a case in which the court has jurisdiction, if erroneously granted, is voidable only, not void; and until set aside, it is entitled to obedience.

Where, in such action, the injunction prayed for was granted, service upon the mayor, of the complaint and copies of the affidavits on which the injunction was issued, was sufficient, under § 220 of the Code of Procedure, without serving them upon the members of the common council.

All the members of the common council upon whom such injunction was served were bound to observe it. An injunction against a corporate body is binding upon all individuals acting for the corporation, to whose knowledge the injunction comes.

The passing of a resolution by the common council granting the right which they were forbidden by the injunction to grant, on condition that the grantees should accept the terms of the resolution, was a violation of the injunction by those who voted for it, whether the terms were accepted or not, the resolution itself doing all that the council could do on their part to make the grant effectual.

Such an act was not one of municipal legislation, but in substance a grant upon condition, and the effect of the injunction could not be avoided by giving to an act not legislative in its character the form of an ordinance or resolution.

So far as such resolution was an executive act, by actually making the grant, it was a clear violation of the injunction, even though the legislative powers of the board could not be arrested by the order of the court.

In the exercise of its conceded powers, it was the duty of the board to see that it did not go beyond them and do an act which had been lawfully forbidden.

THE relators, in December, 1852, as well on their own behalf as on the behalf of all other corporators and tax-payers of the city of New-York who might be affected by the proceedings complained of, commenced an action before the superior court against the mayor, aldermen and commonalty of said city. It was alleged by the plaintiffs in their complaint, that they were inhabitants of said city, and owners of real estate situated on Broadway, the principal street and thoroughfare therein. That the corporation had by law the powers of commissioners of highways, and authority to make repairs in the streets, but not to grant to any persons an exclusive privilege, or the right to erect permanent structures or obstructions therein. That a resolution authorizing a private company to construct and perpetually maintain a railroad in said street had been once passed by the boards of aldermen and assistant aldermen of said city, which resolution, after having been returned by the mayor with his objections, was about to be passed by said boards notwithstanding such objections. The plaintiffs alleged that the construction of the road would greatly injure them and other inhabitants of the city; that the right to construct it ought not to be granted, assigning a variety of reasons, and, among them, that the road would be a public

nuisance. They charged that the action of the boards was in bad faith, and prayed for an injunction to restrain the corporation from granting the right to construct such road, or to remove the pavement, or to do any other act preparatory thereto; and that such injunction might be made perpetual.

On filing the complaint an injunction was issued restraining the defendants, "their counselors, attorneys, solicitors and agents, and all others acting in aid or assistance of them," as prayed in the complaint, until the further order of the court; and the defendants were required to show cause, at a time fixed, why the injunction should not be made perpetual.

The summons and complaint, with the affidavits and the injunction, were served upon the mayor, and the summons and injunction upon the persons composing the two boards. The defendant, Sturtevant, was a member of the board of aldermen. That board, disregarding the injunction, passed by the requisite vote, including that of the defendant Sturtevant, the resolution which had been returned by the mayor, granting to certain persons the right to construct a railroad in Broadway, upon their filing with the clerk of the common council an acceptance in writing of the resolution, and their agreement to conform thereto.

The defendant was brought before the superior court, at special term, on attachment, charged with contempt of the court in violating the injunction; and the foregoing facts appearing, he was adjudged guilty of the contempt, and a fine of $350 imposed upon him, together with imprisonment for fifteen days. This judgment was affirmed on appeal to general term; and the defendant brought a further appeal to this court.

*David Dudley Field* and *Charles O'Conor* for the appellant.

*John Van Buren* and *S. Beardsley* for the respondents.

JOHNSON, J., delivered the opinion of the court.

The first question to be considered is, did the injunction impose any obligation upon anybody? The answer must depend upon the solution of the further question, whether the superior court had jurisdiction of the action in which it was ordered to be issued; because the principle is of universal force, that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous. The method of correcting error is by appeal, and not by disobedience. A party proceeded against for disobedience to an order or judgment, is never allowed to allege as a defence for his misconduct that the court erred in its judgment. He must go further, and make out that in point of law, there was no order, and no disobedience, by showing that the court had no right to judge between the parties upon the subject. The point has been held over and over again in reference to the very case of disobedience to injunctions (*Deklyn* v. *Davis, Hopk.*, 135; *Sullivan* v. *Judah,* 4 *Paige,* 444; *Russell* v. *East Anglian Railway Co.*, 1 *Eng. L. & E. R.*, 101, 106; *Glascott* v. *Lang,* 3 *Mylne & Craig,* 452), and is well stated in general terms in *Wilcox* v. *Jackson* (13 *Peters,* 511). "Where a court has jurisdiction it has a right to decide every question which occcurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it acts without authority, its judgments and orders are regarded as nullities; they are not voidable but simply void."

To enable us to proceed to say whether the superior court had jurisdiction, and whether, consequently, its injunction in *Davis et al.* v. *The Mayor, &c., of New-York* was void or not, it will be convenient to recur to some almost elementary notions upon the subject. In *The State of Rhode Island* v. *The State of Massachusetts* (12 *Peters,* 718), Mr. Justice BALDWIN, delivering the opinion of the majority of the supreme court of the United States, says: "Jurisdiction is

the power to hear and determine the subject matter in con-troversy between parties to a suit; to adjudicate, or exercise any judicial power over them ; the question is, whether on the case before a court, their action is judicial or extra-judicial; with or without the authority of law to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the court has jurisdiction ; what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action, by hearing and determining it." (See also *Grignon's Lessee* v. *Astor*, 2 *How.*, 338.) This, I apprehend, points to the true line of inquiry to determine the question of jurisdiction. We are not called upon to say whether the court decided right or not in granting the injunction, but whether it became their duty to decide either that it should be granted or denied. If such was their duty, then they had jurisdiction, and their decision, be it correct or erroneous, is the law of the case until it shall be reversed upon appeal; and can only be ques-tioned upon a direct proceeding to review it, and not collaterally.

Now it is not, nor can it be denied that Davis and Palmer had a right to sue in the superior court, nor that the mayor, aldermen and commonalty of the city of New-York might be sued in that court ; and it is equally clear that Davis and Palmer did, by summons and complaint, institute a suit against them there. So far, therefore, as the parties were concerned, there would seem to be no difficulty in respect to sustaining the jurisdiction.

Then, how is it as to subject matter? The jurisdiction of the superior court depends upon § 33 of the Code of Procedure. This declares, so far as it can possibly bear upon this case, that it shall extend to the following actions, viz : 1. To those specified in §§ 123 and 124, when the cause of action shall have arisen, or the subject of the action shall be situated within the city of New-York ; 2. To all other

actions where all the defendants shall reside or be personally served with the summons within the city; and 3. To actions against corporations created under the laws of this state, and transacting their general business, or keeping an office for the transaction of business within the city, or established by law therein. The only actions specified in §§ 123 and 124, which can possibly be deemed to include the suit of *Davis and Palmer* v. *The Mayor, &c.*, are described in the first subdivision of § 123 as being " for the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and *for injuries to real property*." Now, under whichever of these heads of jurisdiction this case comes, and it is at any rate comprised under that which relates to actions against corporations, its subject matter cannot be any more out of the jurisdiction of the superior court than it is out of that of every other court. Its jurisdiction is not made to depend upon the subject matter of the suit, except in respect to those cases which come under the first subdivision; and as to those, the test of jurisdiction in the superior court, is, whether the cause arose, or the subject is situated, in the city of New-York; and if this action should be thought to come under that subdivision, then clearly the cause arose, or its subject is situated, within the city, and so the case is within the jurisdiction of the court. Under the second and third subdivisions of § 33, so far as they bear upon this case (and so far as they have been stated above), jurisdiction is made to depend in the second subdivision upon the residence of the defendant, or the service of the summons within the city; and in the third, upon the character and locality of the corporation defendant. In all other respects the jurisdiction is as wide as the definition of an action under the Code, and that is defined to be " an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offence."

The subject matter of the suit of *Davis and Palmer* v. *The Mayor*, *&c.*, to state it in the most general way, is an alleged public nuisance about to be perpetrated under the authorization of the defendants, by the building of a railway in Broadway; and the relief demanded is, that the defendants should be restrained from granting that authority. There seems, therefore, to be no ground upon which this case can be said to be out of the jurisdiction of the superior court which would not apply with equal force to any other court, not having jurisdiction of what the Code calls criminal actions.

Now the cases show abundantly that courts of equity possessed jurisdiction in respect to public nuisances, and exercised it by restraining them in certain cases; in others, by refusing to interfere. ( *Attorney-General* v. *Johnson*, 2 *Wils. Ch. R.*, 87; *Spencer* v. *London and Birmingham Railway*, 8 *Sim.*, 193; 2 *Story's Eq.*, §§ 920–938, *and cases there cited.*) The subject itself was within their jurisdiction. What judicial action should be had upon that subject was matter of equity, determinable according to the circumstances which each case presented. Whether relief was granted or denied, the decision was judicial, and grounded upon a jurisdiction in the court to act upon the subject matter.

Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced, nor the right of the plaintiff to avail himself of it if it exists. It precedes these questions, and a decision upholding the jurisdiction of the court is entirely consistent with a denial of any equity, either in the plaintiff or in any one else. The case we are considering illustrates the distinction I am endeavoring to point out, as well as any supposed case would. It presents these questions: Have the plaintiffs shown a right to the relief which they seek? and has the court authority to determine whether or not they have shown such a right? A wrong

determination of the question first stated is error, but can be reëxamined only on appeal. The other question is the question of jurisdiction. It· is that alone with which we now have anything to do. Whether the plaintiffs are the proper persons to maintain the suit, or whether the attorney-general should have brought it, or whether the facts show a right in either to have a decree in their favor, are questions which we are not· in this proceeding called upon to consider. They relate to the· equity of the claim, and not to the power of the court. We are entirely. satisfied that the decree of a court of equity restraining a public nuisance is not void, even though the attorney-general be not plaintiff, and though no special injury to the actual plaintiff is averred. It is quite possible that such a decree would be erroneous, perhaps even very clearly wrong, but it would not be void; and the party who was dissatisfied with it would be compelled to seek his remedy by an appeal, and not by setting at defiance the authority of the court.

The terms of the injunction, as we have already seen, forbid the granting to certain persons named in the resolution, a copy of which was annexed to the complaint, or their associates, or any other person or persons whomsoever, the right, liberty or privilege of laying a· railway track in Broadway,, or ·in any manner authorizing them so to do.

The complaint alleges that the establishment of this railway in Broadway would be a nuisance. The injunction, therefore, upon its face is only such as we have already concluded the court had jurisdiction to order.

The act which is complained of as a violation of the injunction, is the adoption by the common council of the resolution referred to; and the participation of the defendant Sturtevant in that act, by voting in favor of the resolution as a member of the board of aldermen, is relied upon as rendering him liable to punishment therefor.

The People *against* Sturtevant.

The terms of the injunction which forbid the granting or in any manner authorizing the persons named to lay the railway, addressed as its restraining words are, to "The mayor, aldermen and commonalty of the city of New-York, their counselors, attorneys, solicitors and agents, and all others acting in aid or assistance of them, and each and every of them," are certainly broad enough to include every mode of action of which the corporation was capable, and every agency which it could employ to effect the forbidden thing. Now the adoption of the resolution in question by the common council was one mode of making the grant, or authorization, forbidden by the injunction. The resolution had previously been passed by both boards, and had been vetoed and returned by the mayor to the board of aldermen. It is upon its face a complete authority, so that no further act on the part of the city, save that of its adoption, was necessary in order to impose an obligation upon the city, and to confer upon the parties named in it a right to construct a railway in Broadway. Its words are:

"*Resolved*, That Jacob Sharp, &c., have the authority and consent of the common council to lay a double track for a railway in Broadway," &c. ; "the said grant of permission and authority being upon and with the following conditions and stipulations."

Then follow regulations arranged under fifteen heads, providing for the mode of building and employing the road, the rates of fare and the compensation to the city, the organization of the grantees into a company, and in the last place providing as follows : "The associates whose names are set forth in this resolution shall, by writing filed with the clerk of the common council, signify their acceptance thereof, and agree to conform thereto," &c. It was contended upon this last provision, that until acceptance signified by the associates the resolution did not become an effectual grant, and therefore was no violation of the command of the

injunction. This I cannot agree to. The injunction is pointed at the acts of the mayor, aldermen and commonalty of the city, and when it restrains them from granting, it would be giving the command an absurd construction so to read it as that no act of theirs could violate it. Such is the construction contended for. Every grant is inoperative and incomplete until acceptance, express or implied, by the grantee. The common council did all they could do, and all that was in any event to be done by them, towards making the grant effectual. If they had not then violated the injunction, they never could have violated it. The language of an injunction, like that of all other instruments, must have a reasonable construction with reference to the subject about which it is employed. If one be forbidden to do an act which he alone cannot completely perform, the prohibition will be intended to be good at all events to the extent within which it is in his power to violate it. A prohibition to grant has reference merely to the act of the grantor, and in the common usage of the words would, unquestionably, be understood to relate to his act of granting, and not to the grantees' acceptance. I cannot, therefore, entertain any doubt that the mandate of the court did forbid the act which has been adjudged to be a violation of it, nor that the act of the defendant in voting for the resolution made him a participator in that violation.

Another question has been raised by the appellant, to the consideration of which the question just discussed naturally leads us, and which, although of the same nature as the objection to the jurisdiction of the court first considered, could not so conveniently be examined, until we had in the first place ascertained what was the actual import of the terms employed in the injunction, and whether they were such as to forbid the defendant, as a member of the board of aldermen, to vote for the resolution or grant in question.

The appellant's proposition is, that the court had no power to restrain his vote upon the resolution its adoption being, as he contends, an act of legislation by the common council, and, as such, beyond the control of all courts. Thus far, at least, the appellant must carry the doctrine, for if it stop short of the point of a want of power, the question relates merely to the propriety, or correctness in point of law, of the actual determination, and not to the existence of the power of determining. In that case, as we have already seen, we, upon this proceeding, have nothing to do with the correctness of the decision granting the injunction; nor had the superior court, except in so far as the propriety of the original order is always taken into account by a court in exercising its discretion as to the degree of punishment to be inflicted for a violation of its requirements.

A satisfactory answer to this position is, that the act in question in this case was not in any just sense an act even of municipal legislation. It is true that it took the form of a resolution, but in substance it was a grant upon condition; and even if immunity belongs to municipal legislation, it cannot be that by giving to an act not legislative the form of an ordinance or resolution, the jurisdiction of the courts can be defeated. Should it even be conceded that the resolution in question was partly legislative in its character, another part was most clearly a matter of agreement or grant. The latter, it was within the jurisdiction of the court to prohibit; so far its prohibition would be operative. If the common council were still desirous of exercising their legislative functions upon the subject, it behooved them to see to it that they made a complete separation of the legislative part of the resolution from the residue. Making a grant is in its own nature not a legislative act. It is such an act as it has always been in the power of any court, possessing equity jurisdiction, to prohibit by injunction. A corporation, municipal or private,

is capable of being sued.  As a corporate body merely, it has no immunities which set it beyond the jurisdiction of the courts.  It may be enjoined from making a grant, just as it may be ordered to make one.  And, as in the latter case it would be no answer to the court which ordered a grant to be made, to say that to obey required legislative action, and that the order was therefore beyond its jurisdiction, so I apprehend that in the former case, the answer grounded on the same position is equally insufficient when addressed to a court which has forbidden a grant.

Again, whatever may be determined as to the proper character of this act, whether it is to be deemed legislative or not, when its character shall come directly in question, it is, I apprehend, plain that the question of its true legal character is judicial; one which must be disposed of by the adjudication of courts, and can be dealt with in no other way.  The court, therefore, which is called upon to determine this question, is called upon to perform a legitimate judicial function.  It has authority to perform it, and is exercising jurisdiction when it makes its decision.  It follows, that it has power to arrest the consummation of the act until it determines the question; and its order, though it may be erroneous, cannot be regarded as void.

When an objection to the jurisdiction is pointed at the power of a particular tribunal to entertain and pass upon a question, it may be that its incidental or direct determination upon the question of its own power, is always capable of being assailed collaterally.  So far as this rule extends, it proceeds partly upon the ground that no other rule will suffice to restrain tribunals of limited jurisdiction within their proper bounds.  But when the question relates not to the competency of the particular tribunal, but to the scope of judicial power, a different rule prevails.  From necessity, the question must be determined judicially.  No other power is competent to deal with it.  No court is any more competent than any other court of general jurisdiction to

pronounce upon it. No reason, therefore, exists why a determination of such a question by a tribunal having jurisdiction of the parties, and to whose jurisdiction over the subject matter no special objection exists, grounded upon its limited character, should not be conclusive, except in some direct proceeding to review the judgment. As the question must be determined by a judicial tribunal, and none is more competent to dispose of it than that to which it is presented, there seem to be many reasons why that tribunal before which it is first presented for decision should be regarded as able to decide authoritatively; and none why its decision should be subject to be reëxamined collaterally. All the grounds upon which rests the general doctrine of the conclusiveness of judgments, support the position. (*See Nabob of the Carnatic* v. *The East India Company*, 1 *Ves., Jr.*, 388; 2 *id.*, 56; *Grignon's Lessee* v. *Astor*, 2 *How.*, 341; *Ex parte Tobias Watkins*, 3 *Peters*, 203.) In truth, such a question is not in the sense of the law a question of jurisdiction, but one of equity or right generally. In the case just cited (1 *Ves., Jr.*, 388), Lord THURLOW said, to a plea that the matters of agreement in the bill related to and grew out of matters of war and peace between sovereigns: "It is stated to be to the jurisdiction; but it differs from those pleas in all the particulars by which they are ever described; because it is truly observed that it is impossible to plead to the jurisdiction of any particular court without giving another remedy in some other court. This is so far from showing that, that it expressly says the plaintiff has no remedy in any municipal court whatsoever; therefore, I take it, this plea, if it means anything, is in fact a plea in bar. Suppose the contract was gratuitous; suppose it was honorary; suppose it was that species of contract upon which an action does not arise, and that it was necessary for the form of the plea to have brought into the view of the court that it was a demand of that description; the plea would have been a plea in bar of the action, and this

is so if anything; and the whole argument tends to that end, namely, that considering the situation of the parties and the contracts as having a relation to that, such contracts do not give an action. That is a plea which goes in bar. A plea to the jurisdiction of all courts, is absurd and repugnant in terms; for it is as much as to say that the nature of the subject is such as does not admit of an action. Suppose, for example, it was stated that all the matters upon which those in support of the plea rely, comprehend that species of treaty which the law ought to pronounce impracticable for the cognizance of a court of municipal jurisdiction; it is only saying that an action does not lie." In my judgment, the consequence of a determination that we might in this case consider whether the superior court ought to have allowed this injunction, would be, that we should establish the rule that in all cases the question whether, upon the complaint, a right in the plaintiff was shown, was open for consideration collaterally.

I do not, therefore, think it expedient further to consider this branch of the question, nor to consider what ought to have been the determination of the learned judge of the superior court on the application to grant the injunction. Having been granted in a case of which I conceive that court had jurisdiction, it must, for the purposes of this proceeding, be deemed at all events a valid exercise of power, and as such entitled to obedience.

The remaining questions in the case, relating to the proceedings upon the attachment, involve, to a considerable extent, matters resting in the discretion of the court below, and which, presenting no question of law, are not in any view of the case reviewable by us. Such are the differences in punishment inflicted upon the different persons proceeded against, depending upon the view of the court below, as to the more or less aggravated character of the contempt of which they had respectively been found guilty.

The questions of law which it is necessary for us to consider, I shall briefly advert to. The service of the summons and complaint with the injunction upon the mayor of the city, was a sufficient service upon the defendants in the suit. In my opinion the effect of an injunction or decree, restraining any acts of a corporate body, and addressed in the ordinary way to it, or its agents, &c., is, to bind not only the intangible artificial being, but also all the individuals who act for the corporation in the transaction of its business to whose knowledge the injunction or decree comes. Unless this be so, it would be necessary, in order effectually to bind a corporation by an injunction, to make every person a party to the suit who could by any possibility be its agent in doing the prohibited act. No such practice has ever prevailed. On the contrary, I think the case of *The Bank Commissioners* v. *City Bank of Buffalo* (1 *Barb. Ch. Prac.*, 636) before the chancellor, shows, that the view above stated is in accordance with the rule of the former court of chancery. In that case, the president of the bank, upon whom the injunction had been served, concealed the fact from the other officers of the bank, who ignorantly performed acts in violation of it. The chancellor held him guilty of contempt. This could only have been on the ground that the same acts would have been a contempt on the part of the other officers, if they had had notice of the injunction. Unless notice would have had this effect, the withholding information of the injunction from them by the president, could not have been deemed a contempt, for the giving it, if it imposed no obligation, would have been an idle ceremony.

Whether a failure to serve a copy of the affidavit on which the injunction was granted, will in any case render the injunction entirely inoperative, under the 220th section of the Code, which says: "A copy of the affidavit must be served with the injunction," but does not point out the consequences of not serving the copy, is not necessary to be determined in this case. Here, there has been a technical

compliance, by making such service upon the mayor, with the summons and complaint by which the suit was commenced.

In administering the law in respect to the violation of injunctions, the court of chancery never lost sight of the principle that it was the disobedience to the order of the court which constituted the contempt, and, therefore, although it required of the party availing himself of its order, a substantial compliance with the rules of practice upon the subject, it would not usually allow the effect of its orders to be wholly lost, when the party sought to be bound by the order had actual knowledge, or notice of its existence, although there might have occurred some slip in the formal method of bringing it home to him. (*Hull* v. *Thomas*, 3 *Edw. Ch. R.*, 236; *People* v. *Brower*, 4 *Paige*, 405; *McNeil* v. *Garratt*, 1 *Cr. & Phil.*, 98.)

In respect to the manner of proceeding against the defendants, I see no error on the part of the court below. Under the provisions of the Revised Statutes (*part 3, ch. 8, tit. 13, § 1, subd. 3*), every court of record has power to punish, by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a cause or matter depending in such court may be defeated, impaired, impeded or prejudiced, in the following cases (among others): " 3. Parties to suits, attorneys, counselors, solicitors and all other persons, for the non-payment of any sum of money ordered by such court to be paid, in cases where by law execution *cannot* be awarded for the collection of such sum; and for any other disobedience to any lawful order, decree or process of such court." " 8. All other cases where attachments and proceedings, as for contempts, have been usually adopted and practiced in courts of record, to enforce the civil remedies of any party to a suit in such court, or to protect the rights of any such party."

Under each of these provisions the case of the defendant may clearly be included    The court has determined as mat-

ter of fact, that the defendant's misconduct was calculated to, and did actually, defeat, impair, impede or prejudice, the rights or remedies of the relators; and there was certainly enough before them to make it entirely competent for them so to determine. From this determination it resulted that they were bound to proceed to impose a fine, to imprison, or both, as the nature of the case might require. (2 *R. S.*, 538, § 20.) The punishment which has been imposed is within the legal limits to which the court were authorized to extend it. The precise degree of punishment, within those limits, which the circumstances of the case called for, rested, I think, entirely in the discretion of the court below, and their determination in respect to it does not present any question upon which we can be called upon to pass.

Having come to the conclusion that the determination below was correct, we do not think it necessary to express any opinion upon the preliminary question, as to the right of appeal from the special to the general term.

The whole court concurred.

Judgment affirmed.