ROCKINGHAM, JUNE, 1891.

---

### FOWLER v. BECKMAN & a.

Service of a copy of an injunction, order, or decree is sufficient notice of the injunction without a writ.

A person who knowingly aids and abets in the violation of a decree which enjoins the defendants, "their servants, aiders and abettors," is liable to attachment, though not a party to the bill and not personally named in the decree.

To a complaint alleging the respondent's violation of an injunction which required him to refrain from occupying a lot of land, it is no defence that a town passed a vote purporting to authorize his occupation.

COMPLAINT, by Richard Fowler against Asa Beckman, Reese Owen, and Abram W. Perkins, alleging a violation of a decree in equity. On notice to show cause why an attachment should not issue, the case was heard by a justice in vacation, June 15, 1891, and reserved. The complainant was the defendant in the action of trespass *qu. cl.—South Hampton* v. *Fowler*, 52 N. H. 225 (*S. C.*, 54 N. H. 197)—in which case he recovered a judgment that established his title against South Hampton.

August 4, 1890, the complainant and others filed a bill in equity in this county against Beckman and Owen (two of the respondents) and Sewell B. Fowler. In the bill, the plaintiffs alleged, in substance and effect, that they were owners in severalty of the strip of land in Seabrook, about a mile in length, varying in width from forty to eighty rods, and bounded easterly by the ocean, westerly by the marsh, northerly by Hampton river, and southerly by the state line ; that the defendants were trespassers on the land, having no right there ;_ that in July, 1887, said Beckman wrongfully built a hou-e there, although notified by the owner of the land not to do so ; that an action of trespass, brought by the plaintiff. Richard Fowler, against Beckman, was referred to Judge Ladd, who found Beckman guilty, and assessed damages ; that Beckman defended that suit as tenant of said Owen ; that at the trial Owen assumed the defence, and claimed the whole strip under an alleged deed from Sally Fowler, deceased, which deed purported to have been made in 1870, but was not recorded till about the time of Beckman's entry ; that all persons who appear on the deed as witnesses and justice, and the person by whom, according to Owen's testimony, the deed was written, are dead ; that Owen's defence was founded on fraud ; that other litigation (specified in the bill) terminated in favor of the plaintiff's title ; that the defendants continue to commit trespasses on the land ; and that their irresponsibility, and the prevention of irreparable damage and a multiplicity of suits, make a case within the jurisdiction of equity ;— " and whereas the plaintiffs have maintained their titles as against the defendants in suits at law, and whereas by the results as found the plaintiffs are the owners and in possession of said beach, and the defendants are trespassers," the plaintiffs pray that the defendants be enjoined from cutting any more trees, bushes, grass, or herbage on the land, from turning their cattle or horses to feed on the herbage thereof, from driving over and across the land, and from committing any acts of trespass thereon. The plaintiffs also pray for an order on the defendants to leave said beach, with their families, horses, cows, servants, aiders and abettors, and to enjoin them from entering anew upon the land, as they threaten they will do, and for general relief.

The bill having been served, the defendants appeared by counsel at the October term, 1890, no answer was filed, the bill was taken *pro confesso*, and a decree was rendered that the defendants,

their servants, aiders and abettors, are strictly enjoined and commanded not to cut any trees, bushes, grass or herbage on the land, and not to turn any cattle or horses to feed on the herbage thereof; also from driving over and across the land except in such passways as the plaintiffs shall leave open for the use of the public; also from committing any acts of trespass on the land; also to leave the land, with their families, horses, cows, aiders and abettors, forthwith, and not to enter anew upon the land until they have purchased a right therein, or made good a title thereto in a suit at law or in equity. It was also ordered and decreed that a writ of possession issue. March 19, 1891, Chase, a deputy sheriff, read a copy of the decree to the defendants of that suit,—Asa Beckman, Reese Owen, and Sewell B. Fowler,—and gave each a copy, and on the 27th day of April, 1891, he made like service on the selectmen of Seabrook, and on the town committee chosen April 17, 1891. The clerk has issued no writ of injunction, and no other sealed paper for the enforcement of the decree than a writ of possession, and that has not been executed. The respondents contend they are not liable because no process under seal has been served on them, or issued to enforce the decree.

After the copies of the decree were served on the defendants against whom the decree was rendered, two of them, Beckman and Owen, for the purpose of avoiding the decree and depriving the plaintiffs of the benefit of it, caused steps to be taken that are now set up as a defence to this complaint. A petition was drawn, signed by twenty voters, and presented to the selectmen of Seabrook, requesting them to call a town-meeting to see what action the town would take, if any, in relation to renting the beach or any part of it. At a town-meeting called in pursuance of the petition, and holden April 17, 1891, the record shows the following action: "To see if the town will vote to choose agents to lot off the beach and rent the same. Voted 52 Yes—14 No. Voted —To nominate three agents. Francis Beckman, Reese Owen, Abram W. Perkins were choosen agents." The record also shows that Owen and Perkins took the oath of office, as agents, April 24, 1891. Owen and Perkins, claiming to act as town agents, went upon the strip of land described in the bill (called "the beach" in the bill and the town vote), and divided and staked it into lots, making the lots seventy feet wide, except when that width carried the line through houses. When that happened, as it did in the case of the house built by Beckman, and in other instances, they made the lots wide enough to include the buildings. In this lotting, the house built by Beckman is on lot No. 69. The following paper was signed and delivered to Beckman, who paid Perkins $2: "May 13, 1891. Received of Asa Beckman $2 for rent for one lot of beach land No. 69 for one year. Received payment as agents for the town of Seabrook. Reese Owen, Abram W. Perkins." May 26, 1891, Chase went to that lot with the writ of

possession, found the respondents there, told them he had served copies of the decree on them, read the writ to them, laid hands on them, and ordered them off. They refused to go, claimed a right to be there under the action of the town, and said if he put them off they should come back. Beckman continues in the occupation of the house and lot, claiming possession as tenant of the town. The only witnesses at the hearing were Chase, called by the complainant, and Owen, called by the respondents. The testimony of both witnesses shows a violation of the decree by Beckman and Owen, unless the facts herein stated are a defence. The same testimony shows a violation of the decree by Perkins, unless the same facts, and his not being a party personally named in the bill in equity and decree, are a defence. No evidence was offered of any title or right but that shown in the plaintiffs by the record.

*S. H. Goodall*, for the complainant.

*S. W. Emery*, for the respondents.

ALLEN, J. When an act is prohibited by a judicial order or decree, technically called an injunction, a person who knowingly violates the prohibition before he has formal notice of it, and before the order or decree is extended upon the record, is liable to arrest, and to the same penalty as if a copy of a writ of injunction had been read and delivered to him by a sheriff. *Winslow* v. *Nayson*, 113 Mass. 411, 420; High Inj., *ss.* 1421–1424, 1444. The order or decree is the injunction. Its legal effect does not depend upon the form of the oral or written communication by which it is made known to those whose aggression it prohibits. Formal notice of it is given for their information, and as a means of proving their knowledge. If they are aware that they are doing what they have been enjoined not to do, the law does not require the service of process or notice for the purpose of giving them information which they already have; but ready and sure proof of their knowledge may become convenient and useful if the plaintiff is compelled to apply for an attachment.

In *Buffum's Case*, 13 N. H. 14, 16, the remark that service of a copy of an injunction decree "is not sufficient to authorize an attachment," may be a mere statement of English practice quoted from 1 Smith Ch. Pr. 429, without consideration. In that case, a writ of execution of the decree, as well as a copy of it, had been served, and an examination of the subject was unnecessary. "Injunctions may be ordered by the court, or by any justice thereof, by an order, and such order shall have the same force and effect in all respects as if a writ of injunction were issued." 37th Chancery Rule, and Chancery Forms 3, 13; 38 N. H. 613, 615, 619; 56 N. H. 612, 613, 617. Other orders and decrees in equity were not named in the rule, for the reason that they were understood to be

operative without writs of enforcement in cases in which writs are not required by statute. There is no more occasion for final process in the form of a writ in an injunction case than in any other equity suit. In this case, the respondents had full knowledge of the decree, and for the purpose of this proceeding their knowledge was as effective as if it had been derived from a writ of injunction. The want of process under seal is no defence to the complaint.

The plaintiffs in the bill in equity have such a legal title or possession that they have been successful in all suits brought upon or against it. The decree obtained by them against Beckman and Owen is no broader than the prayer of the unresisted bill, in any respect material to the present charge. The decree has not been reversed or vacated, and cannot be collaterally impeached. *Fowler* v. *Brooks*, 64 N. H. 423; *State* v. *Kennedy*, 65 N. H. 247; *People* v. *Sturtevant*, 9 N. Y. 263. On the facts found without evidence of title in the town, if the vote of April 17, and the acts of the town agents, Owen and Perkins, are to be considered as corporate, municipal acts, they make the town an aider and abettor of Beckman and Owen in the violation of the decree. A further hearing may change the present aspect of the case; but on all the evidence that has been introduced, the respondents stand no better than they would if the vote had been merely and expressly to aid and abet Beckman and Owen in defying the law. As title is not shown in the town, it does not appear that the town's vote "to choose agents to lot off the beach and rent the same" contained any element of validity or legality. Without right or title, the town, as an accessory of Beckman and Owen, induced by them to take part with them in invading private property and resisting legal authority, is of no more avail than a private accomplice. If the operation of the decree could be suspended by the mere act of a town or other person claiming title and putting the respondents in possession, it could be perpetually stayed by a succession of pretenders employed by Beckman and Owen to give them the shelter of groundless claims.

Perkins was not a party to the bill, and his name is not in the decree. But the decree properly enjoined the defendants, "their servants, aiders and abettors;" and as a copy of the decree was read to him and given to him, he knew that his subsequent acts as an aider and abettor of Beckman and Owen were prohibited, and he is liable for his violation of the decree as if he had been personally named therein. High Inj., *ss.* 1440–1443.

The complaint will be further heard at the trial term, where judgment will be rendered.

*Case discharged.*

DOE, C. J., and CARPENTER, J., did not sit: the others concurred.