William Jay Schieffelin, Respondent, *v.* John F. Hylan and Others, Defendants, Impleaded with Charles L. Craig, Appellant.

Second Department, April 9, 1920.

Contempt — injunction restraining comptroller of city from issuing obligations — failure to notify subordinate of injunction — violation of injunction by subordinate — when comptroller liable for civil contempt — damage to taxpayer not measured in money.

Where the comptroller of the city of New York had been restrained by order of the court from issuing certain corporate stock or notes of the city upon requisitions of the Public Service Commission and was duly served with said order but on the day following said service said stock was issued by a subordinate of the comptroller who had been given no information of the injunction, the comptroller, although not guilty of a criminal contempt, may properly be fined $250 and costs for a civil contempt as permitted by section 773 of the Judiciary Law.

It is immaterial that the instruments were issued merely to carry out a previous obligation if in fact the issue of them had been prohibited by injunction.

A violation of an injunction by a subordinate whom the principal might have warned after service does not relieve the principal from civil liability.

The fine for contempt may be imposed in a taxpayer's suit even though the extent to which the plaintiff's rights and remedies are impaired may not be stated in money.

Mills, J., dissents, with opinion.

Appeal by the defendant, Charles L. Craig, comptroller of the city of New York, from an order of the Supreme Court,

made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 6th day of December, 1919, holding and adjudging the appellant guilty of a contempt of court, in having disobeyed the order theretofore made by a justice of the court, dated February 13, 1919, restraining him, as comptroller of the city of New York, " from issuing corporate stock or corporate stock notes of said city in any amount upon the requisitions of the Public Service Commission for the First District made from time to time by said Commission during the years 1915, 1916, 1917 and 1918 and prior to March 18, 1913, and from applying the proceeds realized upon the issue and sale of any corporate stock or corporate stock notes of said city in any amount to the redemption of special revenue bonds issued for the purpose of providing funds to meet the said expenses of said Commission or issued. for any other purpose."

The injunction was in an order to show cause, granted on Thursday, February 13, 1919, returnable on Friday, February fourteenth. The return day was subsequently fixed for the fifteenth. The order was served on the comptroller's office at three-thirty P. M. of the thirteenth, and reached the comptroller personally later that afternoon. Apparently appellant did nothing respecting this order that day, or on Friday, until after the meeting of the board of estimate. His affidavit says: " Immediately upon my return from the Board of Estimate meeting and then having a copy of the order I called it to the attention of Duncan MacInnes, the Chief Accountant and head of the Bureau of Accountancy."

Affidavits from Mr. MacInnes were filed, but no mention is made therein of what instructions, if any, the comptroller gave to stop any steps in the proposed issue of corporate stock.

On the fourteenth, John Korb, acting for the comptroller, and without information of the injunction, signed the warrant for this $1,000,000, after service of the injunction order upon his chief, Mr. Craig. The record shows that Monday, February seventeenth, was the date of the sale of the two $500,000 notes to the sinking fund. This later delay was due to a change in the city chamberlain's office, and the fact that the newly-appointed chamberlain had not earlier qualified.

The learned court at Special Term acquitted defendant of criminal contempt, but found his omission to notify his subordinates, and so prevent the consummation of this prohibited increase of the city's indebtedness in corporate stock, constituted a civil contempt. With a finding that such misconduct was calculated to, and did, defeat, impair, impede and prejudice the rights and remedies of the plaintiff, the court fined him $250 and costs, amounting to $824.38. (109 Misc. Rep. 369.)

*Luke D. Stapleton* [*William P. Burr, Corporation Counsel, William E. C. Mayer* and *Charles J. Druhan* with him on the brief], for the appellant.

*Leonard M. Wallstein* [*Ralph M. Frink* with him on the brief], for the respondent.

PUTNAM, J.:

Appellant's first ground in justification or excuse is that this transaction had already been legally effected, so as to need but formal and unimportant documents for its completion.

Even if instruments are given merely to carry out a previous obligation, the issue of them, if prohibited, is a violation of such an injunction.

It is further urged that the consummation of the issue and sale of $1,000,000 of city corporate stock was without appellant's knowledge, since by reason of Mr. Craig's personal preoccupation in the arguments on the hearing at Special Term on the fifteenth, he was not aware of such issue of warrants by his subordinates, who had not been told of this restraining order. These latter considerations, no doubt, weighed with the justice at Special Term, who has, therefore, relieved appellant from any criminal contempt.

It is, however, established that a violation by a subordinate, whom the principal might have warned after service, does not relieve the principal from civil liability. (1 Joyce Inj. § 249; *Mundy* v. *Lidgerwood Manufacturing Co.*, 34 Fed. Rep. 541; *Poertner* v. *Russel*, 33 Wis. 193.)

In *People* v. *Sturtevant* (9 N. Y. 263, 277), JOHNSON, J., delivering the opinion of the court, said: " In my opinion the

effect of an injunction or decree, restraining any acts of a corporate body, and addressed in the ordinary way to it, or its agents, etc., is, to bind not only the intangible artificial being, but also all the individuals who act for the corporation in the transaction of its business to whose knowledge the injunction or decree comes. Unless this be so, it would be necessary, in order effectually to bind a corporation by an injunction, to make every person a party to the suit who could by any possibility be its agent in doing the prohibited act. No such practice has ever prevailed. On the contrary, I think the case of *The Bank Commissioners* v. *City Bank of Buffalo* (1 Barb. Ch. Prac., 636) before the chancellor, shows, that the view above stated is in accordance with the rule of the former court of chancery. In that case, the president of the bank, upon whom the injunction had been served, concealed the fact from the other officers of the bank, who ignorantly performed acts in violation of it. The chancellor held him guilty of contempt. This could only have been on the ground that the same acts would have been a contempt on the part of the other officers, if they had had notice of the injunction." This general principle is specially applicable to an office of many branches, such as the finance department of the city of New York.

It is here urged that in a taxpayer's suit, without personal pecuniary interest, no fine for civil contempt should be given. Although there is a stay of further issue of this $1,000,000 of corporate stock already sold to the commissioners of the sinking fund, the remedy invoked to stop this increment to the city's funded debt has partly failed. To that extent plaintiff's rights and remedies are impaired; and, although such impairment may not be stated in money, such disobedience is not without a penalty.

The learned court at Special Term, having all the facts before him, in his discretion has absolved appellant from more than a civil contempt. In such case section 773 of the Judiciary Law provides that " Where it is not shown that such an actual loss or injury has been produced, a fine must be imposed, not exceeding the amount of the complainant's costs and expenses, and two hundred and fifty dollars in addition thereto." (*People ex rel. Springs* v. *Reid,* 139 App. Div. 551.)

I advise, therefore, that the order be affirmed, with ten dollars costs and disbursements.

RICH, BLACKMAR and KELLY, JJ., concur; MILLS, J., read for reversal.

MILLS, J. (dissenting):

I dissent and vote to reverse the order appealed from and to deny the motion, upon the following grounds, namely:

(1) The opinion of the justice at Special Term indicates that he held the view that it was the duty of the comptroller, the appellant, to notify the city chamberlain of the service upon him, the comptroller, of the injunction order. I think that that view was mistaken, and that the comptroller was under no such duty. The chamberlain is an independent official appointed by the mayor and not at all a subordinate of the comptroller. The plaintiff should have caused the injunction order to be served upon each independent city official having part in the transaction which he wished to prevent.

(2) The appellant has been held for a civil, not a criminal, contempt. An essential element of that is substantial detriment to the complaining party, or at least that the act had a substantial tendency to produce that result. Here the plaintiff, as it is, has succeeded in effectually staying the transaction which he sought to enjoin, although at the last stage instead of at some earlier one. I cannot see that he suffered any damage from this difference or that it in any way increased his effort or expense.

Every element of the transaction as to the $1,000,000 of corporate stock still remains in the absolute control of the city officials, the rights of no outside party having intervened; and it cannot be doubted that if the plaintiff succeed at the trial those officials will speedily undo what they have done in the matter, which after all amounts to practically nothing more than a series of bookkeeping entries.

Order affirmed, with ten dollars costs and disbursements.