John D. Bennett, S.
The question to be decided is one of jurisdiction of the Surrogate’s Court. The parties to this accounting proceeding are the executors of two estates, both of which are being administered pursuant to letters testamentary granted by this court. The question comes up for decision on a motion to dismiss the proceeding as to the respondent-executors acting under the last will and testament of Guy B. Bacon.
Andrew J. MacElroy died July 15, 1963 owning 1,194 shares out of a total of 2,000, or a majority of the capital stock of a closely held corporation, the Acorn Publishing Company. He had been an active principal in the company for about 45 years. The next largest block of stock was owned by Guy B. Bacon, one of the key employees, who owned 507 shares and survived Mr. MacElroy. The relationship between MacElroy and Bacon was one of friendly trust and confidence as demonstrated by the provisions of MacElroy’s will.
By the will and codicils, MacElroy specifically directed his executors to offer his stock first to Bacon at a price “ equal to the book value thereof as the same shall be finally fixed for Federal Estate Tax purposes.” (Paragraph Fourth of the will, “ elaborated and explained” by the first codicil, paragraph First, B, 1.)
Bacon died in Nassau County almost three years after MacElroy, on May 11, 1966, after he and the MacElroy executors had partially fulfilled the conditions set down in the MacElroy will. Bacon had accepted the offer of the MacElroy executors and entered into a formal written agreement. There are numerous provisions in the MacElroy will and codicil setting forth specific stipulations which were to be part of the *95 agreement; however, for the purpose of this decision it is sufficient to generalize. In making the written agreement the parties placed no particular significance on the words “book value ”, and provided for a sale by the executors to Bacon at a fixed unit price of $59, subject to later adjustment between the parties, depending upon the result of the Federal estate tax audit.
During his lifetime Bacon paid to the MacBlroy executors $42,267.60 as an installment on account of the purchase price, and received 716 shares of the stock'. Incidentally, this gave Bacon a total of 1,223 shares and majority control of the corporation. The MacBlroy estate filed a Federal tax return on the basis of the unit price, valuing the full 1,194 shares at $70,446. Bacon’s death intervened however before the tax audit results were known, so that after his executors were appointed they were in due course notified by the MacBlroy executors, pursuant to the terms of the agreement, that the Federal authorities had issued a closing letter and determined the value to be $83,520.30 for the 1,194 shares, or $69.95 per share. The MacBlroy executors accordingly offered to deliver the balance of the contracted-for stock and demanded payment of $41,252.70 from the Bacon estate, being the balance claimed to be due at $69.95 per share, after giving credit for the amount paid by Bacon during his lifetime. This demand was rejected by the Bacon estate and they have since raised various questions which are alleged as grounds for not completing performance, including the jurisdictional grounds hereinafter mentioned.
The MacBlroy executors have filed their account of proceedings with this court and petitioned for its settlement. They joined the Bacon estate executors as parties, recited the principal facts involved, attached the agreement entered into, and now ask to have the debt liability of the Bacon estate determined in this proceeding. The two estates have been unable to resolve their differences and both sets of executors have disputed the question of liability since on or about June 16, 1967, when the demand for performance was first presented. It appears that no other action or proceeding has been instituted in this or any other court concerning the subject matter and the MacBlroy executors have requested the advice and direction of this court as to the sale of the stock and for such other relief as the court may deem just and proper. The form of the proceeding and the specific relief sought is no obstacle under modern-day pleading and practice, and both sets of executors assume, according to the briefs submitted by counsel, that the real and ultimate purpose of the relief sought is to interpret the will and the *96 sales agreement, to adjudicate and enforce the claim of the MaeElroy estate against the Bacon estate, according to whatever remedies can be afforded in this forum. The jurisdictional questions, therefore, will be considered in that aspect and not limited to the form of advice and direction (see SOPA 202).
The motion to dismiss is denied, and the court holds, that it does have jurisdiction to hear and to make a complete determination of all questions concerning this controversy as between the two sets of executors; that it presently has complete jurisdiction of both the subject matter and of the parties now before it, particularly the executors of both estates, and has the power to direct the service of further process to add additional parties, if deemed necessary or desirable. Jurisdiction in personam as regards the executors of the above estates needs no elaboration, as both sets of executors were appointed by this court and are here by virtue of the petition and appropriate process (SOPA 203). As to any other persons, who may during the proceeding be found necessary or desirable to add, the court’s process may be served and executed within or without the State (SOPA 212). The subject-matter jurisdiction, on the other hand, merits further explanation.
In this court’s opinion, all but one obstacle to full and complete jurisdiction was removed by the State Constitution and the statutes recently adopted, so that Surrogates’ Courts in New York may now hear and determine any and all controversies relating to the affairs of decedents. The one area expressly reserved is inter vivos trusts, which often give rise to problems after death but apparently are regarded by the Legislature as not being sufficiently related to the affairs of decedents to give jurisdiction to the Surrogates’ Courts, except in certain limited aspects not necessary to mention here.
As long ago as 1853 our Court of Appeals in People v. Sturtevant (9 N. Y. 263), in reviewing earlier decisions of the United States Supreme Court, at page 266, quoted as follows from State of Rhode Island v. State of Massachusetts (12 Pet. [37 U. S.] 657, 718): “ Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit, to adjudicate, or exercise any judicial power over them; the question is, whether in the case before a court, their action is judicial or extra-judicial; with or without the authority of law, to render a judgment or decree upon the rights of the litigant parties. If the law confers the power to render a judgment or decree, then the Court has jurisdiction; what shall be adjudged or decreed between the parties, and with which is *97 the right of the case, is judicial action, by hearing and determining it.” In the Sturtevant case the court said (p. 267), as to the particular jurisdiction of the lower court there dealt with (the Superior Court of the city of New York): “Its jurisdiction is not made to depend upon the subject-matter of the suit, except in respect to those cases which come under the first subdivision; and as to those, the test of jurisdiction in the superior court, is, whether the cause arose, or the subject is situated, in the city of New York”. Continuing (p. 268) the court said: “ In all other respects, the jurisdiction is as wide as the definition of an action under the code, and that is defined to be ‘ an ordinary proceeding in a court of justice ’ ’ ’. (Emphasis supplied.)
In Matter of Leggat (162 N. Y. 437, 443) the Court of Appeals reversed the Appellate Division and affirmed an order of the Surrogate’s Court, citing its earlier decision in Develin v. Cooper (84 N. Y. 410) which said that jurisdiction consists of three things: ‘ ‘ First, power by law to act upon the general subject-matter; • second, jurisdiction of the person * * *;
third, jurisdiction of the particular case.” More recently (1966) the Court of Appeals dealt with subject-matter jurisdiction involving the Surrogate’s Court, holding that it had general subject-matter jurisdiction as to probate of wills, and said: “ In other words ‘ subject matter ’ does not mean ‘ this case ’ but ‘ this kind of case ’ ” (Matter of Rougeron, 17 N. Y. 2d 264, 271).
This question of jurisdiction was thoroughly studied by the Temporary State Commission on Law of Estates, which incorporated in its Fifth Report to the Governor and the Legislature (N. Y. Legis. Doc., 1966, No. 19) a recommendation that jurisdiction of inter vivos trusts be conferred on Surrogates’ Courts concurrently with the Supreme Court. Although this recommendation as to inter vivos trusts was not adopted, the text of Report No. 4.4.1A (Appendix M-l), page 1140, is instructive as it reviewed the problems involved, the statutory history of Surrogates ’ Courts generally. It was, for instance, pointed out (p. 1147) quoting from Matter of Raymond v. Davis (248 N. Y. 67): “ ‘ Concentration of jurisdiction as to decedents’ estates * * * is the purpose clearly revealed in the statutory scheme. The state has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy.’ It was said further: ‘ Only by such relief can there be complete justice between the parties without oppressive expense or harrowing delay. ’ ’ ’ The *98 report pointed out the legislative policy of ‘ ‘ continually expanding jurisdiction ”, and (p. 1148) reminded the Legislature that: “ The Constitution now in effect is significantly different as to the powers of both the Supreme Court and the Surrogate’s Court Later in the report (p. 1163) it was stressed that significant changes were made in the Constitution adopted in 1961, particularly in section 7 of article VI; that therein the Supreme Court is given general jurisdiction but it also specifies only one “ field in which that court has exclusive jurisdiction ”, namely, in the City of New York over misdemeanors prosecuted by indictment. It is pointed out (p. 1164) that: “By implication it appears that except for that one subject the Legislature is free to grant concurrent jurisdiction to any other court.” Then, considering whether there is anything in the provisions of the Constitution which would limit the right of the Legislature to grant other than specific powers to the Surrogates ’ Courts, it was reported that the Constitution clearly authorized the Legislature to confer upon the Surrogates’ Courts, concurrently with the Supreme Court, jurisdiction over any type of action or proceeding except in the limited field over which the Supreme Court was granted exclusive jurisdiction. This does not mean, of course, that the Legislature, in granting jurisdiction to another court, may deprive the Supreme Court of any jurisdiction which it possessed at the time of the taking effect of the Constitution.
The language of the Legislature in the new Surrogate’s Court Procedure Act is, therefore, significant in the light of .the commission’s recommendations and reports. The afore-mentioned constitutional provisions, as well as those in section 12 of article VI which refer specifically to the Surrogate’s Court, were obviously borne in mind by the Legislature when it adopted the Surrogate’s Court Procedure Act. Indeed the Constitution is specifically mentioned in subdivisions 1 and 2 of section 201 which is entitled “ General jurisdiction of the surrogate’s court.” The language of subdivision 3 of section 201 is significant especially when it is read against the background of the foregoing studies and recommendations of the Temporary State Commission. The court stresses certain words to emphasize the general nature of the jurisdiction granted to the Surrogate’s Court': ‘ ‘ 3. The court shall continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any *99 other person having any claim or interest therein, over whom, jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.” (Italics added.)
It can be held, with reason and logic, that SCPA 201 in and of itself gives to the Surrogate’s Court jurisdiction “ as wide as the definition of an action ’ ’, as the Court of Appeals said in People v. Sturtevant {supra, p. 268), that the court’s jurisdiction as to subject matter covers literally all questions and all matters so long as they relate to the affairs of any decedent. The Reviser’s Notes to that section state that the powers were enumerated ‘1 in perhaps an excess of caution ’ ’, so as to make sure that all of the powers contained in the previous Surrogate’s Court Act would be carried into the new statute. The language of SCPA 201 would therefore seem to confer all of the jurisdiction necessary to hear and determine any controversies that may arise in this case merely because it relates to the affairs of decedents. There are, however, additional sections concerning powers which were granted to the court expressly incidental to its jurisdiction (§ 209) and defining its “ jurisdictional predicate ” (§ 210). By SCPA 209 the court is specifically granted power “4. To determine a decedent’s interest in any property claimed to constitute a part of his gross estate subject to estate tax, or to be property available for distribution under his will * * * or for payment of claims, and to determine the rights of any persons claiming an interest therein, as against the decedent, or as between themselves, and to construe any instruments made by him affecting such property.” And, further, “ 9. In the exercise of its jurisdiction, the court shall have all of the powers that the supreme court would have in like actions and proceedings ”.
The controversy now presented concerns not only the “affairs” of two decedents, but the shares of stock in the Acorn Publishing Company are claimed to constitute a part of the gross estate of the decedents for estate tax purposes; claimed to be property available for distribution under the will of either or both decedents, and the entire 1,194 shares were seemingly made available by MacElroy in his will for distribution to Bacon according to details of the terms and conditions expressed therein. Not only is the court asked to determine the interests and the rights of both decedents in those shares and in the consideration paid or due therefor, but it is also asked to construe the will and the agreement. There is, of course, no suggestion by any party that this court is or will *100 be asked to consider any inter vivos trusts as prohibited by subdivision 4 of SCPA 209.
The “ Jurisdictional predicate ” of SCPA 210, particularly paragraph (b) of subdivision 2, specifically fits the situation here, and is further determinative on the question of jurisdiction in- this particular controversy: “ (b) The receipt and acceptance of any property paid or distributed out of and as part of the administration of an estate subject to the jurisdiction of the court shall constitute a submission by such recipient to the jurisdiction of the court as to any matter concerning the payment or distribution, including proceedings for the recovery thereof.” The motion papers and briefs of counsel concede that Bacon received and accepted part of the shares of stock in question, that they were paid and distributed out of and as part of the administration of the MacElroy estate which at the time was itself subject to the jurisdiction of this court. Accordingly, if the jurisdictional predicate is followed literally, the act of Bacon constituted the submission by him and his representatives to the jurisdiction of this court as to any matter concerning the payment or distribution.
In the opinion of the court the foregoing considerations amply justify the statement in Carmody-Wait, New York Practice (vol. 25, 2d, § 149:74): ‘ ‘ Thus, even though these provisions of the SCPA are repetitious, and some of them are somewhat superfluous, it seems clear that the intent of the legislature is to give the Surrogate’s Court sufficiently wide jurisdiction to enable it to make a complete disposition of all matters affecting infants and relating to the estate of a decedent, and thereby make it unnecessary for parties to go to different courts to obtain all of the needed relief.”
In arriving at the decision on the motion many of the ‘ ‘ facts ’ ’ involved have been outlined herein; however, the court has not given any consideration whatever at this time to the merits of the controversy. The foregoing statements should, therefore, be considered in that light and not as passing upon the questions which have been raised by counsel. Counsel have indicated a desire to have the matter submitted on the papers without a hearing, and the court will attempt to do so unless a hearing is requested.
Settle order on notice, denying the motion and fixing a date for a hearing, or, in the alternative, if no hearing is desired, submitting the matter for decision by the court on the papers and memoranda now submitted or to be submitted before a date to be fixed therein.