FEELEY v. WURSTER et al.

(Supreme Court, Equity Term, Kings County. December 14, 1898.)

1. MUNICIPAL OFFICERS—MISFEASANCE—LIABILITY—COMPLAINT — SUFFICIENCY.
A complaint by a taxpayer against municipal officers for restitution of public funds alleged to have been fraudulently paid out on city contracts, alleging that one of defendants was mayor when the bills therefor were presented to him and others to be approved, is sufficient, on the demurrer of the mayor, without an express averment that the mayor signed the warrants, since that fact may be implied from the allegation that he was mayor, where the city charter provided that no money should be drawn from the treasury except on warrants signed by the mayor or acting mayor.

2. SAME—CONSPIRACY—LIABILITY OF MAYOR IN SIGNING WARRANT.
Laws 1881, c. 531, as amended by Laws 1887, c. 673, and by Laws 1892, c. 301, provides for a taxpayer's action against colluding and defaulting municipal officers who have audited, allowed, or paid any fraudulent or inequitable claim against the municipality, to recover the amount of such claim for the municipality. Brooklyn City Charter provided that the mayor should be vigilant in causing the laws to be executed, and should sign all warrants of the corporation after a proper voucher therefor should have been examined and certified to by him. It was the duty of the auditor to audit the claims against the municipality, in the performance of which duty the mayor had no active part. The city works commissioner had full charge and control of the public waterworks, and authority to make contracts relating thereto without advertisement for bids, where the amount was less that $2,000. A complaint by a taxpayer alleged a conspiracy between the city works department and a contractor to split up a job of dredging and cleaning the water supply, so that no advertisement for bids would be necessary, and that competition was thereby prevented, and exorbitant bills for such work were presented, audited, approved, and paid. *Held,* that in the absence of an allegation charging the mayor with being a party to the conspiracy, or with having knowledge or reason to know that the bills were in any way wrong, the complaint did not state a cause of action against him.

3. PLEADING—DEMURRER—INCONSISTENT GROUNDS.
Under Code Civ. Proc. § 488, providing that defendant may demur to the complaint where one or more of the grounds therein specified appear on its face, the inconsistency of the grounds is not an objection to the demurrer, where the points of law relied on to sustain each are not inconsistent with each other.

Action by Peter Feeley against Frederick W. Wurster and others. Defendant Wurster demurred to the complaint. Demurrer sustained.

Bert Reiss, for plaintiff.
Joseph W. Burr, for defendant Wurster.

MADDOX, J. By this action, plaintiff, a taxpayer, seeks a judgment of this court declaring certain bills, claims, and accounts set forth in, and copies of which are annexed to, the complaint, to be false, fraudulent, illegal, excessive, unjust, and inequitable, and the audit and approval thereof by the defendants to be illegal and void; that the individual defendants restore the amount thereof, with interest, to the city of Brooklyn, or its successor, the city of New York; and that the city of New York have judgment therefor against the individual defendants. The defendant Wurster demurs to the complaint upon two grounds, viz.: (1) That it fails to state facts sufficient to con-

stitute a cause of action against him; and (2) that the causes of action are improperly united, one growing out of transactions in connection with the Simonson Twin ponds, and the other with the ponds at Valley Stream, which do not both affect all the parties to this action.

The facts alleged in the complaint, concisely stated, are as follows: That prior to January 1, 1898, and during the times stated therein, the city of Brooklyn was a municipal corporation. That the defendants Wurster, Palmer, and Sutton were, respectively, the mayor, the comptroller, and the auditor thereof; that the defendants Willis, Fielding, and Milne were, respectively, the commissioner, the deputy commissioner, and the chief engineer of the city works department of said city; and that the defendant Dady was a contractor. That by the charter of said city (chapter 583, Laws 1888, as amended by chapter 329, Laws 1895) it was provided that all contracts exceeding $2,000 in amount, and relating to the construction and maintenance of the public waterworks of said city, shall be awarded by said commissioner of city works after advertisement for proposals, except that, with the mayor's written consent, the said commissioner may receive proposals without advertising, and with such consent award the contract to others than the lowest bidders. That shortly prior to November, 1896, the Simonson Twin ponds, at Rosedale, and the ponds at Valley Stream, adjoining ponds in Queens county, and then owned or controlled by said city as a part of its system of waterworks, having become foul and unhealthy, thereupon the board of aldermen of said city, at the instigation of the defendant Willis, by resolution authorized said Willis, as such commissioner, among other things, to do such dredging, cleaning, and other work as might be required for the protection of the water supply, on the streams and ponds furnishing the same, the expense thereof not to exceed $75,000, and transferred that sum to the water-maintenance account, to be used by said Willis, as such commissioner, for that purpose. That about November, 1896, the defendant Dady conspired with the defendants Willis and Fielding, "and divers other persons, to the plaintiff unknown," to spoliate the funds of said city, and especially a portion of the moneys so transferred as above; and in pursuance of said conspiracy, with intent to evade, and thereby evading, the aforesaid provisions of law, they conceived and unlawfully put into execution the scheme of splitting up or subdividing in contracts of less than $2,000 each the performance of the work, and furnishing of material in connection therewith, contemplated by said resolution, upon the aforesaid ponds, which work and material of right constituted but one item of work or job, and should have been included in one contract. That proposals therefor were not advertised for, nor were bids therefor invited, and that thereby competition was prevented, and said Dady was enabled to and did charge therefor excessive and exorbitant prices; the said Willis and Fielding having unlawfully authorized and requested said Dady to do such work and furnish such material as he might see fit, without specifications therefor, and to charge such prices as he chose, and that they unlawfully agreed to pay him out of the funds of said city the prices charged, with an additional 10 per cent. for himself on the amounts so charged. That

between about November 13, 1896, and January 14, 1897, said Dady
made out and presented certain bills and claims in his favor, and against
said city, for work and material alleged to have been furnished upon
said ponds under the contracts so awarded to him by said Willis as
such commissioner, aggregating $25,232.91.    That said claims, which
were thereafter paid out of the funds of said city, were false, fraudulent,
illegal, excessive, and inequitable, and of which the defendants Dady,
Willis, Fielding, and Milne knew, but that they nevertheless caused the
same to be presented, audited, approved, allowed, and paid; they
representing to the defendants Wurster, Palmer, and Sutton "that said
claims and bills were fair, just, and honestly and legally due by said
city to said Dady."    And the only averment in the complaint as against
the demurring defendant is to be found in paragraph 15, which, stated
in extenso, is:

"That, as plaintiff is informed and believes, when the said bills, claims, and
accounts were presented to the defendants John R. Sutton, auditor of said city,
George W. Palmer, comptroller of said city, and Frederick W. Wurster, mayor
of said city, to be approved, the said defendants and the defendants Theodore
B. Willis, Robert W. Fielding, and Peter Milne, with the intent to cheat and
defraud the said city of Brooklyn, and to spoliate its funds, did audit, pass,
certify, approve, and allow each of the same without any examination or in-
quiry as to the true justice, correctness, or legality thereof, all notwithstanding
each of the claims and said bills were fraudulent, illegal, excessive, unjust, and
inequitable, and a waste and misuse of the funds of the city of Brooklyn."

The defendant the city of New York is now the owner of, and enti-
tled to, all the rights and choses in action to which the city of Brook-
lyn would have been entitled; and this action was commenced after
the expiration of demurrant's term of office, and after the consolida-
tion of the city of Brooklyn, with other municipalities, into the present
city of New York.
The sufficiency of the complaint must be gathered from all the facts
stated, and such as can by reasonable and fair intendment be implied
therefrom.    It is not to be "strictly construed against the pleader,
and averments which sufficiently point out the nature of the pleader's
claim are sufficient, if under them, upon a trial of the issue, he would
be entitled to give all the necessary evidence to establish his claim."
Coatsworth v. Railroad Co., 156 N. Y. 457, 51 N. E. 301.    While, upon
demurrer, the relevant facts stated in the complaint are to be held as
admitted, there is thereby, as against the demurrant, no admission of
the legal conclusions stated (Masterson v. Townshend, 123 N. Y. 461,
25 N. E. 928; Starbuck v. Trust Co., 28 App. Div. 309, 51 N. Y. Supp.
8), nor that the construction given to statutes therein is the correct
construction thereof (Angell v. Van Schaick, 56 Hun, 256, 9 N. Y. Supp.
568).    Recognizing that, in the absence of statutory authority therefor,
a taxpayer has, as such, no right of action against a public officer
to prevent waste of public property or the unlawful usurpation of
power, nor to compel the restitution of public funds or property spoli-
ated (Roosevelt v. Draper, 23 N. Y. 323: Ayers v. Lawrence, 59 N. Y.
195), it becomes necessary to give consideration to the language of
chapter 301 of the Laws of 1892, by the authority of which plaintiff
asserts his right to maintain this action, to determine whether the

complaint states, within the rule above laid down, a well-pleaded cause of action against the demurrant, under that act; and this inquiry requires that but passing attention shall be paid to the prior taxpayer's acts.

Notwithstanding that courts of equity have exercised jurisdiction, in appropriate actions, to restrain public officers from "proceeding in violation of law to the prejudice of public rights" prior thereto (People v. Dwyer, 90 N. Y. 409), the statute of 1872 (chapter 161) was the first introduction of the taxpayer's right to institute and maintain such an action. The reasons and the public necessity for such legislation, and that which has since followed upon that subject, have become, because of official misconduct, most apparent; and such laws, being beneficial in purpose and remedial in character, should be liberally construed, to the end that the purpose sought to be attained, "the suppression of the mischief and the advancement of the remedy," might be the better subserved. Ayers v. Lawrence, supra; Chittenden v. Wurster, 152 N. Y. 368, 46 N. E. 857. Chapter 161 of the Laws of 1872, as originally enacted, and as amended by chapter 526 of the Laws of 1879, was preventive in character, since it provided that an action may be maintained by a taxpayer to prevent waste or injury to any public property or funds; and such, as to the taxpayer's right of action, is likewise the character of section 1925 of the Code of Civil Procedure. Hull v. Ely, 2 Abb. N. C. 441; Sheehy v. McMillan, 26 App. Div. 143, 49 N. Y. Supp. 1088. The act of 1872 was repealed by chapter 245, Laws 1880, passed May 10th, to take effect September 1st of that year; and, notwithstanding such repeal, it was again amended by chapter 435 of the Laws of 1880, passed May 27th, to take effect immediately, by which the scope of the legislation for the benefit and protection of the taxpayer was extended by providing that if the waste or injury consisted in an officer, by collusion or otherwise, auditing, allowing, or paying, or conniving thereat, any fraudulent, illegal, unjust, or inequitable claim, the court might prohibit the payment or collection thereof, in whole or in part, or might enforce restitution thereof by the person receiving the same, or might adjudge the colluding official responsible therefor. It is quite unnecessary to further consider this last law (chapter 435, Laws 1880), since the same was expressly repealed by chapter 531 of the Laws of 1881, which is entitled "An act for the protection of tax payers," and as amended by chapter 673, Laws 1887, and by chapter 301, Laws 1892, now provides, so far as applies to the question under consideration, that:

"All officers * * * acting, or who have acted, for * * * any municipal corporation * * * may be prosecuted, and an action * * * may be maintained against them, * * * to prevent waste or injury to, or to restore and make good, any property, funds or estate of such * * * municipal corporation" by a taxpayer,—and further that: "In case the waste or injury complained of consists in any * * * officer * * * by collusion or otherwise, * * * auditing, allowing or paying, or conniving at the * * * audit, allowance or payment of any fraudulent, illegal, unjust or inequitable claims, demands or expenses, or any item or part thereof, against * * * such * * * municipal corporation * * * or by any such officer * * * retaining or failing to pay over to the proper authorities any funds or property of any

\* \* \* municipal corporation, after he shall cease to be such officer \* \* \* the court may, \* \* \* in its discretion, adjudge and declare the colluding or defaulting official personally responsible therefor, and out of his property \* \* \* provide for the collection or repayment thereof, so as to indemnify and save harmless the said \* \* \* municipal corporation from a part or the whole thereof. \* \* \*"

Thus, it will be seen that provision is clearly made to cover the case of a colluding or defaulting officer, and to compel, in the discretion of the court, a restitution by such an officer. It is plain to my mind, looking to all the language of that act, that the defaulting official contemplated thereby is "any such officer \* \* \* retaining or failing to pay over to the proper authorities any funds or property of any \* \* \* municipal corporation, after he shall cease to be such officer." The duties of the demurring defendant, as such mayor, under the Brooklyn charter, so far as relates to this case, were "to be vigilant and active in causing the laws of the city to be duly executed and enforced," and to, "jointly with the comptroller, sign all warrants \* \* \* of the corporation. But he shall not sign any warrant \* \* \* unless a proper voucher therefor shall have been first examined and certified to by him." Title 3, § 11, subd. 2. I have not been referred to, nor have I been able, after careful research, to find, any provision of law, in the charter or elsewhere, requiring on the part of the mayor an "examination or inquiry as to the true justice, correctness or legality of a bill, claim or account" which had been duly audited. The duty of auditing was upon the auditor, whose powers and duties in that regard are specifically and fully set forth in title 5 of said charter, and in the performance of which duties the mayor had no part or voice, save to furnish information possessed by him, when called upon, and to permit an inspection of books and papers in his office (section 4) upon request of the auditor. True, as claimed by counsel, there is no averment that the demurrant signed the warrants; but that fact can, I think, be fairly implied from the facts stated, which are that he was during the times alleged the mayor of said city; that Dady presented bills, which were audited, passed, and allowed; that they were paid out of city funds. And since, by section 1, tit. 6, of the charter, it was provided that "no moneys shall be drawn from the treasury except \* \* \* upon warrants signed by the mayor or acting mayor," the presumption arises that such payment was made in the manner provided by law. The city works commissioner alone had the care, and, subject to the direction of the common council (the board of aldermen), had charge and control, of the public waterworks. Charter, tit. 15, § 1. He was charged with the management thereof, and with keeping the same in a state of efficiency and repair, and was authorized to expend such sums as the common council appropriated for that purpose. Id. § 10. And all contracts relating to said waterworks system in excess of $2,000 in amount were, after advertisement for proposals therefor, to be made by said commissioner alone, but, with the mayor's consent in writing, such proposals might be received without advertisement; and the contracts awarded thereon were to be made by the mayor and said commis-

sioner, and attested by the city clerk. Charter, tit. 18, § 1, as amended by chapter 329, Laws 1895. There is no allegation in the complaint charging the demurring defendant with being a party to, or of having any knowledge or any reason to know of, the conspiracy or scheme set forth in paragraphs 8, 9, and 13 of the complaint, or that he knew or had reason to know that said bills were, or that any item thereof was, false, fraudulent, illegal, excessive, or exorbitant, and none of such facts can by reasonable and fair intendment be implied from the facts stated. Hence the conclusion that the complaint fails to state facts showing that the demurrant was a colluding officer is irresistible, and consequently it fails to state facts sufficient to constitute a cause of action as against him.

The contention of plaintiff's counsel that the demurrer should be overruled because inconsistent, and, as he termed them, self-contradictory grounds of objection are stated, is without merit, and not sustained by the cases he cited. A defendant may in his answer set forth as many defenses as he has (Code, § 507), and may demur to the complaint where one or more of the therein specified objections appear upon its face. Id. § 488. An inconsistency of defenses in an answer is no legal objection to the pleading (Bruce v. Burr, 67 N. Y. 237; Wendling v. Pierce, 27 App. Div. 519, 50 N. Y. Supp. 509); nor, in my opinion, is an inconsistency of grounds of demurrer a legal objection thereto, where the points of law relied upon to sustain each are not inconsistent with each other. Abb. Tr. Brief, Pl. § 9.

The conclusion I have reached renders unnecessary the consideration of the other questions presented. Judgment is therefore directed for the demurrant upon the demurrer, with costs, but with leave to the plaintiff to amend upon payment of costs.